**The COLUMBIA GAS SYSTEM, INC.,
and Subsidiaries, Plaintiffs–
Appellees,**

v.

**The UNITED STATES, Defendant–
Appellant.**

**No. 95–5041.**

United States Court of Appeals,
Federal Circuit.

Nov. 27, 1995.

F. Brook Voght, Miller & Chevalier, Chartered, Washington, D.C., argued for plaintiffs-appellees. On the brief for plaintiffs-appellees were A. John Gabig and Elizabeth P. Askey. Of counsel was Thomas C. Martin, Columbia Gas System Service Corporation, Wilmington, Delaware.

Charles Bricken, Tax Division, Department of Justice, Washington, D.C., argued for defendant-appellant. On the brief for defendant-appellant were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen and Jonathan S. Cohen.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

RADER, Circuit Judge.

## DECISION

The United States Internal Revenue Service (IRS) appeals a decision of the United States Court of Federal Claims. The Court of Federal Claims awarded Columbia Gas System (CGS) interest because IRS paid refunds more than forty-five days after CGS applied for them. *Columbia Gas Sys., Inc. v. United States*, 32 Fed.Cl. 318 (1994). Because CGS submitted its applications for tentative carryback adjustments and refunds for 1980, 1982, and 1984, in processible form, this court affirms.

## BACKGROUND

Under I.R.C. § 6611, IRS must pay interest on any tax overpayment refunded to a taxpayer more than forty-five days after the later of either the tax return due date or the return filing date. I.R.C. § 6611(a), (e). A taxpayer establishes a filing date upon filing a return in processible form. I.R.C. § 6611(h)[1]. To satisfy the processibility requirement, a return must contain "sufficient

1. Formerly § 6611(i). It was redesignated as I.R.C. § 6611(h) by the Omnibus Trade and Com-

required information (whether on the return or on required attachments) to permit the mathematical verification of tax liability shown on the return." I.R.C. § 6611(h)(2)(B)(ii).

This case features refund applications CGS submitted to the IRS in 1986 for taxable years 1980, 1982, and 1984. The dispute focuses on CGS's 1982 Form 1120 corporate tax return and 1982 Form 1139. These forms showed CGS's effort to carryback a net operating loss.

CGS reported a total tax liability of "none" on its 1982 Form 1120 corporate tax return, and its Schedule J. When it filed Form 1120, CGS also filed a Form 1139 requesting a tentative refund of $3,758,468. CGS sought this refund as a mandatory claim of right adjustment under I.R.C. § 1341. Section 1341 permits a taxpayer to adjust its return for recovery of monies treated in prior years under a claim of right. Under section 1341(a)(5), CGS calculated its entitlement to a refund of $3,758,468. CGS reported its tax for 1982 as $2,892,920.

In September 1985, CGS submitted another Form 1139 requesting an additional refund of $20,987 for 1982. CGS sought a refund for a net operating loss (NOL) carryback by filing an application for a tentative carryback adjustment. I.R.C. § 6411. In general, a taxpayer who suffers a NOL may carry the loss back to each of the three years preceding the year of the loss, and then forward up to fifteen years following the loss, until the loss is fully absorbed. I.R.C. § 172. CGS sought its 1982 refund based on its capital loss carryback from 1984. This new Form 1139 reduced CGS's 1982 tax (computed under section 1341(a)(5)(A)) from $2,892,290 to $2,871,934. CGS reported this amended figure on its 1985 Form 1139.

Finally, on March 17, 1986, CGS filed its 1985 income tax return including the two Form 1139s at issue. The first Form 1139 requested a refund for taxable years 1982 and 1984. Due to a NOL and business credit carrybacks in 1985, CGS became eligible for

petitiveness Act of 1988.

these refunds. CGS carried its NOL for 1985 back to 1982, releasing investment tax credits for that year for carryback to 1980. This carryback prompted CGS to submit another Form 1139, seeking a refund for 1980.

On April 14, 1986, IRS disallowed CGS's refund request. In its denial, IRS noted that its records did not show CGS's tax liability for 1982 as $2,871,934. Instead, IRS contended that CGS's pre-carryback income tax liability for 1982 was zero not $2,871,934. Due to this discrepancy, IRS considered CGS's application for refund non-processible. Because of the close relationship amongst CGS's three refund claims, IRS treated all these refunds as non-processible.

During later negotiations, IRS eventually admitted having lost CGS's 1984 tax return. CGS provided IRS with another copy of the tax return. On May 13, 1986, IRS gave CGS its 1984 refund, even though the 1984 refund was part of the disallowance letter. On October 8, 1986, CGS resubmitted its Form 1139s to IRS. These were copies of the same forms sent to the IRS on March 17, 1986.

Finally, on December 15, 1986, IRS concluded that the refunds CGS sought for 1980 and 1982, reported on the Form 1139s, sought refundable credits. Thus, IRS processed CGS's request and issued CGS refunds for the 1980 and 1982 tax years. These refunds, however, did not include interest.

Before the Court of Federal Claims, CGS sought interest on the refunds paid more than forty-five days after filing its applications for tentative carryback adjustment. The trial court ordered IRS to pay CGS interest on the 1980 refund. The court reasoned that IRS made the refund payment more than forty-five days after submission of a processible form. The court held that the 1984 refund request was processible when filed on March 17, 1986.

## DISCUSSION

■ On appeal from the Court of Federal Claims, this court reviews legal conclusions *de novo* and fact findings for clear error. *Applegate v. United States*, 25 F.3d 1579, 1581 (Fed.Cir.1994). The proper interpreta-

tion of a statute is a question of law. *Marano v. Department of Justice*, 2 F.3d 1137, 1141 (Fed.Cir.1993).

This case presents the question of what constitutes a processible return. Under section 6611(h)(2), a return—including an application for tentative refund—is processible if: (1) filed on a permitted form; (2) filed in proper form with the taxpayer's name, address, identifying number, and the required signature; and (3) filed with sufficient information (whether on the return or required attachments) to permit the mathematical verification of tax liability on the return. *See* I.R.C. § 6611(h)(2)(B)(i)(ii). CGS satisfied the first two requirements for a processible form. Thus, CGS's case for interest on its return turns on whether it filed a "mathematically verifiable" return.

■ Mathematical verifiability requires sufficient information to permit IRS to recalculate and corroborate the mathematics and data reported by the taxpayer. Thus, under section 6611, a taxpayer must submit, in good faith, all the required forms with the required signatures and enough underlying data for IRS to verify the tax liability shown on the return. The information must be sufficient to enable IRS to calculate the tax liability without undue burden.

■ In this case, as the trial court determined, IRS granted CGS refunds based on the data on the forms submitted on March 17, 1986. In other words, IRS actually processed CGS's return without submission of any additional data. IRS's successful processing of the returns supports the trial court's determination that CGS submitted processible and mathematically verifiable returns.

The trial court, however, assessed carefully CGS's entire relationship with IRS. CGS reported no tax liability in 1982 on its Form 1120 yet subsequently submitted a Form 1139 and reported a tax liability of $2,871,934 for 1982. The dispute between IRS and CGS arose over whether CGS's Form 1139 should have stated that its 1982 tax liability was zero or $2,871,934. CGS arrived at $2,871,-934 as its 1982 tax liability because it em-

ployed the calculations required under section 1341.

The trial court held that CGS's forms were processible because CGS computed the $2,871,934 figure by following section 1341(b), the instructions on the Form 1139, and IRS's previous treatment of the same situation in 1983. The trial court first examined the language of section 1341. Section 1341(b) specifically allows deductions from the "tax imposed by this chapter for the taxable year (computed without the deduction)." I.R.C. § 1341(b). The excess, or the amount available for potential refund, is to be refunded or credited as if it were an "overpayment for such taxable year." *Id.* The trial court correctly found that this reasoning was compatible with CGS's view that its 1982 tax liability was $2,871,934. [A18]. IRS conceded that $2,871,934 remained available for refund for the 1982 tax year.

IRS had confronted this same scenario in 1983 with CGS. On May 16, 1983, CGS filed a Form 1139 requesting a $3,758,468 refund from an investment credit carryback from 1982 to 1979. In this instance, IRS showed CGS's 1979 tax liability as zero and disallowed the refund request. Eventually the Manager of the System Tax Planning discerned that the discrepancy between IRS records and the Form 1139 for 1979 was due to a claim of right (COR) adjustment in that year. IRS then paid the refund including interest. CGS thus followed an established course of conduct with IRS.

Moreover IRS conceded that Form 1139 does not reflect reality when, in a past year implicated by a refund application, a taxpayer has calculated its tax under section 1341. The trial court found that section 1341 produces "the tax for the taxable year computed without such deduction." A taxpayer would then deduct the overpayment of taxes due to COR income. CGS treated the former figure as the "total tax liability" sought on Form 1139. The trial court correctly agreed that CGS followed the instructions on Form 1139 to reach its $2,871,934 figure.

Regarding the October 8, 1986 resubmissions, CGS did not change the numbers reported on the 1986 Form 1139. Furthermore, IRS did not request any information

not already within its possession. Based on these submissions, IRS processed the return and paid the amounts CGS claimed. Thus, CGS's initial submissions contained sufficient information to permit accurate processing. If ultimately processed without additional information, the trial court correctly determined that CGS's forms must have been processible when filed.

Regarding the 1984 refund request, the trial court noted it was more problematic because CGS received its refund for 1985 on May 13, 1986, before the October 8, 1986 resubmission. The 1984 refund request was also the subject of a disallowance letter. Therefore, the IRS would only be liable if the March 17, 1986, submissions were treated as filed under section 6611(e).

The trial court properly found the disallowance letter does not alter CGS's application for a refund. Therefore, even though under section 6411 a disallowance is non-reviewable, it does not affect the submission of the refund application.

The trial court also documented several administrative errors throughout the IRS proceedings. IRS lost CGS's 1984 tax return three times; IRS lost CGS's file; and IRS ignored CGS's attempts to explain its 1982 tax liability figure. As the trial court found, it was IRS's administrative errors that caused confusion, not CGS.

In this case, CGS supplied all the necessary forms with required signatures and sufficient information. IRS admitted that CGS's calculations were mathematically correct. Therefore, CGS's forms were processible. Because CGS's forms were processible when submitted they are entitled to interest from that date, March 17, 1986.

## CONCLUSION

The Court of Federal Claims correctly held that CGS's forms met the standard for processibility under I.R.C. § 6611(h).

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*