98 F.3d 1359
 78 A.F.T.R.2d 96-6705, 96-2 USTC P 50,540
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The SWIG INVESTMENT COMPANY, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5051.
 United States Court of Appeals, Federal Circuit.
 Oct. 10, 1996.
 
 Before ARCHER, Chief Judge, MICHEL, and RADER, Circuit Judges.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 Swig Investment Company (Swig) appeals from the December 14, 1994 judgment of the United States Court of Federal Claims, No. 92-50 T, dismissing its complaint. We affirm.
 
 BACKGROUND
 
 2
 Swig brought a refund suit to contest the Internal Revenue Service's (IRS) disallowance of a business expense deduction claimed by the Fairmont Hotel Company in San Francisco, California, for the 1984 tax year.[1] Swig's refund claim pertains to a $3,023,347 expenditure to replace an entablature, which had been constructed in 1907 and consisted of five foot high unreinforced terra cotta and concrete parapets with overhanging cornices around the entire roof perimeter.
 
 
 3
 In 1969, the City of San Francisco (the city) passed an ordinance setting higher safety standards for parapets and cornices because of the hazardous conditions caused by earthquakes. In 1980, the city notified the Fairmont Hotel that its parapets and cornices were potentially hazardous in a major earthquake.[2] The notice required corrective action which could include strengthening, reconstructing, bracing or removing the parapets and cornices. Fairmont hired an engineer, an architect and a construction company to determine the extent of the necessary repairs. This investigatory team, however, recommended that the parapets and cornices be replaced. The construction company was then authorized to replace these old structures with new parapets and cornices made of glass fiber reinforced concrete (GFRC), which made them lighter and stronger than the original ones. They were also attached to the hotel using welded connections instead of wire supports, making them more resistant to damage from lateral movement. The cost of this replacement was $ 3,023,347 and the Fairmont deducted it from its 1984 gross income as an ordinary and necessary business expense pursuant to 26 U.S.C. § 162(a) (1994) (IRC).
 
 
 4
 The IRS disallowed the deduction, ruling that the amount should be treated as a capital expenditure pursuant to IRC § 263. The disallowance resulted in the assessment of additional tax and interest. Fairmont paid the resulting deficiencies and filed a claim for a refund. When the IRS denied the claim, Fairmont filed a refund suit in the Court of Federal Claims on January 23, 1992.
 
 
 5
 After trial, the Court of Federal Claims delivered its opinion from the bench on May 16, 1994. The court found:
 
 
 6
 The project significantly improved the structural soundness of the building. In addition, the project cured a defect and brought the hotel into compliance with the San Francisco requirements in the Parapet Safety Program. The project removed a hazardous structural deficiency....
 
 
 7
 The structure and construction of the hotel was changed substantially. The new parapets and cornices will last an indefinite time in the future....
 
 
 8
 The new installation cannot be considered as a deferred repair and maintenance. R & M [repair and maintenance] would have repaired existing terra cotta and fastenings. R & M would not include installation of new and different fastenings. The new installation is integral to the hotel building, it is not an appendage.
 
 
 9
 The Court of Federal Claims held that the $ 3,023,347 expenditure was a capital expenditure subject to depreciation and not an ordinary and necessary business expense fully deductible in 1984.
 
 DISCUSSION
 I.
 
 10
 In an appeal of a judgment from the Court of Federal Claims, we review the questions of law de novo and the factual findings for clear error. See Columbia Gas System, Inc. v. United States, 70 F.3d 1244, 1246 (Fed.Cir.1995); Shelden v. United States, 7 F.3d 1022, 1026 (Fed.Cir.1993). The proper interpretation of a statute is a question of law. Columbia Gas, 70 F.3d at 1246.
 
 II.
 
 11
 We agree with the Court of Federal Claims that the parapet and cornice replacement expenditure should be classified as a capital investment rather than an ordinary and necessary business expense. Swig has not demonstrated that the expenditures at issue are deductible as ordinary and necessary business expenses under IRC Section 162(a). Swig attempts to dismiss the benefits that accrued to the hotel from the replacement of the parapets and cornices as "incidental," but the Court of Federal Claims found that these expenditure produced significant benefits to the hotel which extended beyond the tax year in question. This finding is amply supported by the record.
 
 
 12
 IRC Section 162(a) provides: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...." Section 263(a) provides: "No deduction shall be allowed for--(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate...." If a payment is properly characterized as a business expense, it is currently deductible. Indopco, Inc. v. Commissioner, 503 U.S. 79, 83 (1992). A payment properly characterized as a capital expenditure, however, must be capitalized and depreciated, generally over the useful life of the asset. Id. at 83-84. "Through provisions such as these, the Code endeavors to match expenses with the revenues of the taxable period to which they are properly attributable, thereby resulting in a more accurate calculation of net income for tax purposes." Id. at 84.
 
 
 13
 Determining whether a payment is a business expense or a capital expenditure is a fact intensive inquiry. The regulations establish the criteria for distinguishing between deductible expenses and capital expenditures. Treas. Reg. § 1.162-4 states:
 
 
 14
 The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of the acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall ... [be capitalized].
 
 Treas. Reg. § 1.263(a)-1 explains:
 
 15
 1 ... no deduction will be allowed for--
 
 
 16
 1 any amount paid out for new buildings, or for permanent improvements or betterments made to increase the value of any property or estate, or
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 (b) In general, the amounts referred to in paragraph (a) of this section include amounts paid or incurred (1) to add to the value, or substantially prolong the useful life of the property owned by the taxpayer.... Amounts paid or incurred for incidental repairs and maintenance of property are not capital expenditures....
 
 
 20
 Treas. Reg. § 1.263(a)-2 provides examples of capital expenditures:
 
 
 21
 (a) The cost of acquisition, construction, or erection of buildings, machinery and equipment, fixtures, furniture and fixtures and similar property having a useful life substantially beyond the taxable year.
 
 
 22
 Under these regulations, a payment is a capital expenditure if it materially prolongs the life of the property or increases its value. Both are true in this case. The new parapets and cornices increased the value of the property and they were expected to last an indefinite time into the future.
 
 
 23
 The new parapets and cornices are lighter and stronger than the old ones and the welded connections provide additional strength and increased protection from stress. The Court of Federal Claims found that the new parapets and cornices, which were made of different material with different fastening and additional steel, significantly improved the structural soundness of the hotel. The city found the old parapets and cornices a potential hazard. Hence, the court's finding that their replacement improved the structural soundness of the building is well supported. Doubtless, removing a potential hazard and replacing it with lighter, stronger material with increased supports which improves the structural soundness of the building also improves the value of the building. In fact, the court found that the hotel management rejected the option of simply removing the non-complying parapets and cornices because such a removal would alter the classical appearance of the hotel and destroy its identity as a "landmark" and a "grand hotel of the world." The hotel management clearly considered the parapets and cornices to be essential to the hotel and a valuable part of the building. Although not specifically quantified, the replacement of these essential structures with new, improved materials and with better and more secure supports and fastenings necessarily provided some increased value to the building, particularly in view of the fact that it also eliminated a potential hazard and an ordinance violation.
 
 
 24
 This replacement also extended the useful life of the decorative features of the hotel and improved them. There is no dispute that the new parapets and cornices were meant to last beyond a year. The expenditures at issue here do assist in extending the useful life of the entire structure. We, therefore, discern no error in the court's finding that the replacement of the parapets and cornices materially prolonged the life of the property.
 
 
 25
 Swig argues that the replacement was an "incidental repair" and as such is deductible as an ordinary and necessary business expense pursuant to IRC § 162(a). This was far more than an incidental repair; it was a major replacement project. All of the parapets and cornices surrounding the entire building were replaced with improved material at a cost of $ 3,023,347. As the district court found, the hotel management rejected several alternatives, including the removal of the parapets and cornices, because the parapets and cornices were essential to the hotel's classical appearance. We are not persuaded that such wholesale replacement should be classified as an incidental repair.
 
 
 26
 We also find untenable Swig's argument that the parapets and cornices have no independent useful life and will be worthless when the hotel becomes structurally unsound. Adopting this logic, work on an aging structure would seldom be classified as a capital investment unless the entire structure is similarly improved.
 
 
 27
 Finally, Swig argues that because it was compelled by a city ordinance to bring its parapets and cornices into compliance, the replacement cost should be treated as an ordinary and necessary business expense. "The fact that a payment is imposed compulsorily upon a taxpayer does not in and of itself make that payment an ordinary and necessary business expense ..." Commissioner v. Lincoln Savings & Loan, 403 U.S. 345, 359 (1971). See also Teitelbaum v. Commissioner, 294 F.2d 541, 544 (7th Cir.1961) (cost of converting electricity in its building from D.C. to A.C. was a capital expenditure despite the fact that it was compelled by a Chicago city ordinance); Woolrich Woolen Mills v. United States, 289 F.2d 444, 448 (3d Cir.1961) (cost of building a filtration plant must be capitalized even though it was only built because of state anti-pollution law); RKO Theatres, Inc. v. United States, 163 F.Supp. 598, 602 (Ct.Cl.1958) (cost of compliance with safety regulations was a capital expenditure because it increased the value of the theater (if only because it could remain in business)). In this case, considering all of the circumstances, the Court of Federal Claims held that the expenditures were capital in nature even though they were the result of the enforcement of the city ordinance. Under the facts, and above-cited authorities, the court did not err as a matter of law.
 
 
 28
 In the process of distinguishing between capital expenditures and business expenses, the rule is that an income tax deduction is a matter of legislative grace and the taxpayer has the burden of clearly showing the right to the claimed deduction. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943). Deductions are exceptions to the norm of capitalization. Indopco, 503 U.S. at 84. The Court of Federal Claims' decision that the replacement of the parapets and cornices constitutes a capital investment is consistent with this rule.
 
 CONCLUSION
 
 29
 Although cases requiring determination of whether an expenditure must be capitalized or may be expensed present close questions, as here, we cannot say that the Court of Federal Claims' findings regarding the increased value from the improvement in the structure of the building and the extended life of the parapets and cornices are clearly erroneous or that it erred in applying the law. Therefore, we affirm that Swig's payment of $ 3,023,347 to replace the parapets and cornices constituted a capital expenditure.
 
 
 
 [1]
 In the years at issue, Swig owned fifty percent of the Fairmont Hotel. In 1986, Swig became the sole owner. When the hotel company was subsequently dissolved, all assets and liabilities were transferred to Swig
 
 
 [2]
 It is undisputed that the parapets and cornices were otherwise still in good condition (they did not generally suffer from deterioration or damage), and were replaced only because they did not comply with the city ordinance