T.C. Memo. 2002-287


UNITED STATES TAX COURT


PAUL A. AND MARILYN J. GROTHUES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13475-99.          Filed November 25, 2002.


<u>J. Raymond Karam</u>, for petitioners.

<u>Roberta L. Shumway</u>, for respondent.


MEMORANDUM OPINION


BEGHE, <u>Judge</u>:  This case is before the Court fully
stipulated under Rule 122.[1]  The stipulation of facts and the
attached exhibits are incorporated herein by this reference.

_____

[1]All rule references are to the Tax Court Rules of Practice
and Procedure, and all section references are to the Internal
Revenue Code in effect for the years at issue, unless otherwise
specified.

Respondent determined the following deficiencies, addition, and penalties with respect to petitioners' Federal income taxes:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|----------------------------------------|
| 1993 | $28,559 | --- | $5,424 |
| 1994 | 18,168 | --- | 2,799 |
| 1995 | 20,497 | $3,017 | 4,099 |

After giving effect to various concessions,[2] the issues remaining for decision are:

1.  Whether petitioners are entitled to a theft loss deduction or deductions for corporate employment taxes allegedly embezzled by Alan Kanz.  We hold petitioners are not entitled to any such deduction.

2.  Whether petitioners are entitled to deductions for corporate employment taxes and interest thereon they paid the IRS out of their own pockets.  We hold petitioners are not entitled to any such deductions.

3.  Whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file their 1995 tax return.  We hold petitioners are not so liable.

---

[2]Petitioners have conceded, among other things, that they are liable for accuracy-related penalties under sec. 6662(a) for the years in issue on any underpayments that finally may be determined.

Background

Petitioners Paul A. and Marilyn J. Grothues (Mr. Grothues and Mrs. Grothues) are husband and wife. They resided in San Antonio, Texas, when they filed the petition in this case.

Between 1971 and 1987, petitioners owned and controlled the following corporate entities: (1) Southwest Oil Co. of Jourdanton, Inc. (SWOJ), (2) Southwest Oil Co. of Eagle Pass, Inc. (SWOEP), (3) Southwest Oil Co. of San Antonio, Inc., (4) Southwest Propane Co., Inc., (5) Southwest Tire Co., Inc., (6) P.A.G., Inc., (7) Bridges Petroleum, Inc., (8) End-User's, Inc., and (9) Trux, Inc.

Between 1971 and 1987, petitioners also owned one-third of the shares of Southwest Slab & Excavation, Inc. (SSAE). The other shareholders of SSAE included Alan Kanz (Mr. Kanz).

In 1984, petitioners formed Southwest Administrative Services (SWAS) as a sole proprietorship in order to centralize the payroll processing for their various corporations. On March 7, 1984, the Internal Revenue Service (the IRS) issued SWAS employer identification No. (EIN) 74-2302051.

Instead of filing a separate Form 941, Employer's Quarterly Federal Tax Return, for each of their corporations, petitioners combined all their corporations' employment tax liabilities and reported them on a single Form 941 under the EIN of SWAS. SWAS wrote and distributed bimonthly payroll checks to the

corporations' employees and wrote checks for the corporations' combined employment tax liabilities. In exchange for these services, petitioners' corporations paid SWAS a handling fee. Petitioners' Federal income tax returns have never included a Schedule C, Profit or Loss From Business, for a sole proprietorship known as SWAS or a partnership return on Form 1065, U.S. Partnership Return of Income, for a partnership known as SWAS.

Mr. Kanz began working for petitioners and their corporations in 1981. At that time, Mr. Kanz had known petitioners for approximately 10 years. Mr. Kanz, then a licensed public accountant, performed services as an independent contractor for petitioners' corporations. His responsibilities included preparation of payroll tax returns and financial statements, the reconciliation of bank statements, and management of petitioners' corporations' financial affairs. He performed these services for petitioners' corporations and SWAS from 1981 to July 1990. He billed each corporation for professional fees based on his number of hours of service for that corporation.

Initially, SWAS maintained a payroll checking account at Brooks Field National Bank in San Antonio, Texas. In March 1987, SWAS opened another account at Trinity National Bank in San Antonio, Texas. Petitioners and Mr. Kanz were the only persons

who had authority to sign checks on the payroll and escrow accounts at Brooks Field National Bank and Trinity National Bank.

Although there was usually enough money in the SWAS accounts to make payroll payments, petitioners' corporations did not regularly transfer enough money to SWAS to cover the corporate employment tax deposits. For this reason, neither petitioners nor Mr. Kanz always immediately signed the corporate employment tax deposit checks. Mrs. Grothues stacked the unsigned corporate employment tax deposit vouchers on her desk.

On each of the Federal income tax returns filed by petitioners' corporations for the 1984-88 tax years, deductions were claimed for each corporation's employment tax liabilities that were reported on the SWAS EIN account.

Ernest Hooks (Mr. Hooks) was employed by petitioners' corporations from 1983 through January 5, 1990. He was responsible for reconciling the corporations' and SWAS's bank statements, and he assumed additional duties associated with SWAS's centralized payroll processing. Mrs. Grothues also participated in the reconciliation of the corporations' and SWAS's bank statements. Both Mrs. Grothues and Mr. Hooks knew that many of the checks written to pay the corporate employment taxes did not clear the bank. Mr. Hooks became uncomfortable with the practices he observed at petitioners' offices, including the delays in signing the corporate employment tax deposit checks

stacked on Mrs. Grothues's desk and the failure of many of the checks written to pay corporate employment taxes to clear the Bank. Mr. Hooks also knew that Mrs. Grothues altered fuel excise tax returns. She instructed him to create a second database and reconstruct invoices to conform with the numbers that had been reported on the State and Federal fuel excise tax returns.

On March 30, 1987, petitioners filed a petition for relief under chapter 11 of the Bankruptcy Code in the U.S. District Court for the Western District of Texas in case No. 87-50747-LC-11. Respondent filed proofs of claim in petitioners' bankruptcy proceedings that included claims for past-due corporate employment taxes of petitioners' corporations. The bankruptcy plan of reorganization for petitioners and their corporations, confirmed on August 14, 1992, provided for payment by petitioners of the corporate employment tax liabilities of their corporations.

On January 5, 1990, after several years had passed without correction of the false fuel excise tax returns, Mr. Hooks terminated his employment with petitioners' corporations and contacted the IRS. Mr. Kanz tried to dissuade Mr. Hooks from talking to the IRS. When it became apparent that Mr. Hooks could not be dissuaded, Mr. Kanz informed the IRS about petitioners' practices with respect to reporting and paying their corporations' employment and fuel excise taxes.

On June 21, 1990, acting upon information provided by Mr. Hooks and Mr. Kanz concerning unpaid corporate employment and fuel excise taxes, IRS special agents executed a Federal search warrant at petitioners' offices in San Antonio, Texas. Subsequently, Mrs. Grothues was indicted and convicted of wilfully failing to file required excise tax returns and to pay excise taxes of SWOJ for the quarters ending June 30, 1986, through September 30, 1988, and of SWOEP for the quarters ending March 31, 1989, through December 31, 1990. Mrs. Grothues was incarcerated in a Federal prison camp from February 1, 1994, to January 21, 1995.

Shortly after June 21, 1990, when the IRS had served its search warrant, petitioners hired Martha Simpson (Ms. Simpson), a certified public accountant, to analyze the corporate employment tax liabilities. The purpose of Ms. Simpson's analysis was to compute SWAS's underpayments of the corporate employment taxes.

On April 23, 1991, two of petitioners' corporations and SWAS filed suit against Mr. Kanz and Mr. Hooks in Southwest Oil Co. v. Kanz, No. 91-CI-05751 in the District Court, 57th Judicial District, Bexar County, Texas (hereinafter, SWAS v. Kanz). Ms. Simpson prepared exhibits A, B, and C, which were attached to the complaint in SWAS v. Kanz (exhibits A, B, and C). Exhibits A, B, and C listed checks written by SWAS in 1984, 1985, and 1986 to pay the corporate employment tax liabilities to the IRS and the

amount shown as applied to the SWAS account by the IRS. On each of exhibits A, B, and C the difference between the total dollar amount of all checks written by SWAS and the total dollar amount shown as applied to the SWAS account by the IRS is the amount petitioners claim Mr. Kanz embezzled. According to exhibits A, B, and C, the missing amounts that petitioners claim Mr. Kanz embezzled were $93,740.11 in 1984, $17,412.91 in 1985, and $75,022.57 in 1986, for a total of $186,175.59.

In April 1991, when the complaint in SWAS v. Kanz was filed, petitioners believed there was a reasonable prospect of some recovery from Mr. Kanz; they thought he was the only child of a wealthy family with extensive land holdings. He also had several childless aunts and uncles. Petitioners believed Mr. Kanz would receive substantial inheritances when his parents and his aunts and uncles died.

SWAS v. Kanz was settled without trial. On September 28, 1993, an agreed judgment (the agreed judgment) was entered. The agreed judgment provided that SWAS "is entitled to recover judgment of and from Defendant [Alan Kanz] the sum of $186,175.59 for conversion of [Form] 941 payroll taxes intended to be paid to the Internal Revenue Service."

At the time of the agreed judgment, Mr. Grothues and Mr. Kanz executed a collateral agreement (the collateral agreement), which provided that Mr. Grothues would not attempt to collect

the judgment against Mr. Kanz in exchange for Mr. Kanz's promise to cooperate and assist in any effort to reduce or eliminate petitioners' liabilities for the corporate employment taxes due the IRS. Both Mr. Grothues and Mr. Kanz contemplated the simultaneous execution of the settlement upon which the agreed judgment was based and the collateral agreement.

At the time petitioners' 1993, 1994, and 1995 tax years were under examination, Mr. Kanz denied he had ever embezzled funds from petitioners, SWAS, or petitioners' corporations. On January 25, 2002, Mr. Kanz admitted he had misappropriated money from the SWAS bank accounts, but he denied he had misappropriated as much as the amount stated in the agreed judgment. On February 12, 2002, Mr. Kanz stated he did not deny any of the findings in the agreed judgment and that he was unable to dispute any of the findings in the agreed judgment insofar as they related to his actions. Mr. Kanz has not reported the alleged embezzlement income on any returns he has filed since 1984.

To date, Mr. Kanz has not cooperated with or assisted petitioners, petitioners' corporations, or SWAS in reducing or eliminating petitioners' liabilities for the corporate employment taxes due the IRS. To date, neither petitioners, petitioners' corporations, nor SWAS have taken any steps to recover from Mr. Kanz the amounts set forth in the agreed judgement.

In 1991, Mr. Kanz was indicted on money laundering charges arising from a Drug Enforcement Agency investigation unrelated to petitioners' claims. On April 9, 1992, Mr. Kanz was sentenced to serve a term of 42 months in a Federal penitentiary. In June 1993, he was released to a halfway house. In December 1994, Mr. Kanz was released subject to electronic monitoring and secured employment at Texas Switch, where he earned approximately $200 per week. From 1995 to 1998, Mr. Kanz worked for Landa Automotive. Since 1998, Mr. Kanz has been employed by New Braunfels Cycle Country, where he earns $2,400 per month. Mr. Kanz's wife operates a housekeeping business. They have no dependent children. Mr. Kanz's father died in the early 1990s, and his mother died in January 2002.

Petitioners claimed embezzlement loss deductions of $90,069 on their 1993 return and $30,000 on their 1994 return for their payments of the corporate employment taxes allegedly embezzled by Mr. Kanz. These deductions are for amounts petitioners estimated that they paid for the past due corporate employment taxes during their bankruptcy. The following chart identifies the quarterly periods and the amounts of tax, penalties, interest, and fees that petitioners actually paid through their bankruptcy on the past due corporate employment tax liabilities during the 1993 and 1994 tax years:

## 1993

| | Tax | Penalties | Interest | Fees |
|---|---|---|---|---|
| 3d-Q 1985 | $22,987.26 | $11,658.13 | $15,345.61 | $9 |
| 4th-Q 1984 | 11,695.00 | 18,540.11 | --- | --- |
| 4th-Q 1986 | 32,903.30 | 3,278.74 | 358.88 | --- |
| Total | 67,585.56 | 33,476.98 | 15,704.49 | 9 |

## 1994

| | Tax | Penalties | Interest | Fees |
|---|---|---|---|---|
| 3d-Q 1985 | --- | ($7,540.66) | $9,943.35 | --- |
| 4th-Q 1984 | --- | 2,274.92 | 1,821.88 | --- |
| 4th-Q 1986 | $27,597.31 | --- | --- | --- |
| Total | 27,597.31 | (5,265.74) | 11,765.23 | --- |

The foregoing amounts total $116,776.03 for 1993 and $34,096.80 for 1994.

On April 15, 1996, petitioners filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, extending the due date of their 1995 tax return to August 15, 1996.  Petitioners claim they timely filed Form 2688, Application for Additional Extension of Time to File U.S. Individual Income Tax Return, which extended the time to file their 1995 tax return to October 15, 1996.  Petitioners mailed their 1995 tax return to respondent on October 15, 1996, and respondent received it on October 17, 1996.  Petitioners did not attach a copy of Form 2688 to their 1995 tax return.  Exhibit 8-P is a photocopy of the Form 2688 allegedly submitted by petitioners.  Respondent claims his records do not show receipt of a Form 2688 from petitioners.

Respondent's examination of petitioners' 1993, 1994, and 1995 income tax returns began on January 8, 1996.

Discussion

Petitioners allege Mr. Kanz embezzled funds from the SWAS bank accounts. Petitioners have claimed a theft loss deduction of $186,175.59 for their 1993 income tax year or, in the alternative, theft loss deductions of $90,069 on their 1993 income tax return and $30,000 on their 1994 income tax return. Petitioners have also claimed deductions for the corporate employment taxes and interest thereon paid out of their own pockets to the IRS as required by the bankruptcy plan of reorganization for petitioners and their corporations.[3] Because of the connection between petitioners' alternative claims for theft loss deductions and deductions for payments of corporate employment taxes and interest thereon, we have combined our discussion of these two issues. We hold against petitioners on both their deduction claims.

Respondent also claims petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file their 1995 return. We hold petitioners are not liable for the addition to tax for failure to timely file their 1995 return.

---

[3]Respondent argues that this is a new issue not raised in the pleadings or in petitioners' trial memorandum. Because we hold against petitioners on the merits of this issue, we will not address respondent's argument.

Issues 1 and 2.  Theft Loss Deductions; Deductions for Payments
of Corporate Employment Taxes and Interest Thereon

Petitioners bear the burden of proving their entitlement to
deductions for theft losses and for payment of the corporate
employment taxes and interest thereon.  Rule 142(a); Welch v.
Helvering, 290 U.S. 111, 115 (1933).[4]  That this is a fully
stipulated case does not alter the burden of proof, or the
requirements otherwise applicable with respect to adducing proof,
or the effect of failure of proof.  Rule 122(b).

Petitioners have claimed their theft loss deduction under
section 165(a) and their entitlement to deductions for paying the
corporate employment taxes and interest thereon under section
162(a).

Section 165(a) allows a deduction for "any loss sustained
during the taxable year and not compensated for by insurance or
otherwise."  Under section 165(a), a theft loss deduction is
allowable for the year "in which the taxpayer discovers such
loss."  Sec. 165(e).  If in the year of discovery the taxpayer
has a claim for reimbursement on which there is a reasonable

---

[4]Sec. 7491(a) places the burden of proof on the Commissioner
in certain circumstances in court proceedings arising from IRS
examinations beginning after July 22, 1998.  See Internal Revenue
Service Restructuring and Reform Act of 1998, Pub. L. 105-206,
sec. 3001(c), 112 Stat. 727.  By the same token, sec. 7491(c)
places the burden of production on the Commissioner with respect
to additions to tax.  Sec. 7491(a) and (c) does not apply in this
case because the examination of petitioners' 1993, 1994, and 1995
tax years began on Jan. 8, 1996.

prospect of recovery, a loss is not considered sustained until the tax year in which it can be ascertained with reasonable certainty whether such reimbursement will be received. Secs. 1.165-1(d)(3), 1.165-8(a)(2), Income Tax Regs. Only the taxpayer who was the owner of the stolen property when it was criminally appropriated is entitled to a theft loss deduction. Draper v. Commissioner, 15 T.C. 135 (1950); Lupton v. Commissioner, 19 B.T.A. 166 (1930); Malik v. Commissioner, T.C. Memo. 1995-204.

In order to be entitled to a theft loss deduction under section 165, petitioners must satisfy the following three requirements: (1) That they were the owners of the allegedly embezzled corporate employment tax funds, (2) that embezzlement actually occurred, and (3) that during the year for which the deduction is claimed, it could be ascertained with reasonable certainty that no recovery could be made. We hold that petitioners are not entitled to any theft loss deduction under section 165 because they satisfy none of the three requirements.[5]

---

[5]Respondent advances two alternative arguments why petitioners are not entitled to a theft loss deduction even if they meet the requirements of sec. 165. First, respondent claims that the collateral agreement executed by Mr. Grothues and Mr. Kanz is equivalent in value to the judgment. Second, respondent claims that petitioners did not include the allegedly embezzled corporate employment tax funds in their income. Because we have ruled that petitioners have not satisfied the requirements of sec. 165 and secs. 1.165-1(d)(3) and 1.165-8(a)(2), Income Tax Regs., we need not address respondent's alternative arguments.

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered.  A deduction for salaries or other compensation includes a deduction for corporate employment taxes. Corporate employment taxes include the following:  (1) The employees' Federal income taxes, secs. 3401 and 3402, (2) the employees' shares of Federal Insurance Contributions Act (FICA) taxes, sec. 3101, (3) the employer's share of FICA taxes, sec. 3111, and (4) employer's Federal Unemployment Tax Act (FUTA) taxes, sec. 3301.  Employers are liable for deducting and withholding from their employees' salaries or wages the employees' shares of Federal income and FICA taxes.  Secs. 162(a), 3102(a), 3402(a), 3403.  In general, section 162 allows petitioners' corporations to deduct amounts paid as corporate employment taxes (Federal income, FICA, and FUTA taxes).[6]  See sec. 162(a); see also R.J. Nicoll Co. v. Commissioner, 59 T.C. 37, 45 (1972); sec. 1.164-2(a), (f), Income Tax Regs.; Rev. Rul. 80-164, 1980-1 C.B. 109.  (Section 164 does not apply to the employer's payment of FICA and FUTA taxes.)  The withheld Federal

---

[6]Federal income and FICA taxes withheld by an employer from an employee's remuneration are considered to be part of that remuneration and deductible as such by the employer under sec. 162(a).

income and FICA taxes are reported quarterly on Form 941. Secs. 31.6011(a)-1(a)(1), 31.6011(a)-4(a)(1), Employment Tax Regs. FUTA taxes are required to be reported annually on Form 940. Sec. 31.6011(a)-3, Employment Tax Regs. We hold petitioners are not entitled to any deductions under section 162(a) for the corporate employment taxes and interest thereon they paid the IRS out of their own pockets. We now address issues 1 and 2 in detail.

A. Ownership of the Corporate Employment Tax Funds; Right to Deduction for the Corporate Employment Taxes and Interest Thereon Paid to the IRS

Respondent argues the embezzlement claim does not belong to petitioners or SWAS but rather to petitioners' corporations. Respondent also argues that petitioners are not entitled to deduct their personal payments of the corporate employment taxes because petitioners' corporations had already deducted the same amounts on their corporate returns.

Petitioners assert the embezzlement claim belongs to them in their individual capacities because the funds were stolen directly from their sole proprietorship, SWAS. Petitioners also argue they are entitled to deduct their payments of the corporate employment taxes out of their own pockets.

Petitioners did not own the corporate employment tax funds in the hands of SWAS and therefore cannot claim a theft loss deduction. On similar grounds, petitioners are not entitled to

deductions for their personal payments of the corporate employment taxes and interest thereon; the separate legal status of petitioners and their corporations requires that petitioners' payments of the corporate employment tax expenses be treated as capital contributions to the corporations rather than as deductible payments by petitioners of their own expenses.[7]

A corporation generally is a separate taxable entity even if it has only one shareholder who exercises total control over its affairs. Moline Props., Inc. v. Commissioner, 319 U.S. 436, 439 (1943); Burnet v. Clark, 287 U.S. 410, 415 (1932). The business of a corporation is separate and distinct from the business of its shareholders. Deputy v. du Pont, 308 U.S. 488, 494 (1940); Crook v. Commissioner, 80 T.C. 27, 33 (1983), affd. without published opinion 747 F.2d 1463 (5th Cir. 1984). A taxpayer is free to adopt such organization for his affairs as he may choose; having elected to do business as a corporation, he must accept

---

[7]Under sec. 6672, the IRS can collect a portion of unpaid corporate employment taxes, namely the employees' shares of Federal income and FICA taxes reported on Forms 941, from persons responsible for the nonpayment of these taxes. A "responsible person" has been deemed to include officers or employees of a corporation who are under a duty to collect, account for, or pay over the corporate employment taxes to the IRS. See Commonwealth Natl. Bank v. United States, 665 F.2d 743, 748 (5th Cir. 1982).

There is no evidence in the record that respondent has made a claim of sec. 6672 liability against petitioners or that petitioners made payments of corporate employment taxes under sec. 6672. In any event we would have no jurisdiction to consider respondent's assertion of any such claim. See Wilt v. Commissioner, 60 T.C. 977, 978 (1973).

the tax disadvantages.  Higgins v. Smith, 308 U.S. 473, 477 (1940); see also Moline Props., Inc. v. Commissioner, supra.  A corporation and its stockholders are separate entities, and the title to corporate property is vested in the corporation and not in the owners of the corporate stock.  Sun Towers, Inc. v. Heckler, 725 F.2d. 315, 331 (5th Cir. 1984) (citing Moline Props., Inc. v. Commissioner, supra). Petitioners have made no claim in this proceeding that the separate legal status of their corporations should be disregarded.

In Vaughan v. Commissioner, 17 B.T.A. 620 (1929), the Board of Tax Appeals refused to disregard the separate entity and disallowed a corporate loss claimed by a stockholder on his own return.  The assistant cashier of a bank embezzled large amounts from the bank.  In order to keep the bank open, the taxpayer, president of the bank and a large stockholder, had to give the bank securities worth $63,336 within 24 hours.  The Board held the taxpayer could not deduct the contribution of $63,336 as a loss, since the bank had suffered the loss, and the bank's loss was not the stockholder's loss.

Petitioners' corporations are entities separate from petitioners and their sole proprietorship, SWAS.[8]  The separate

_____

[8]With respect to entities solely owned by husband and wife as community property under the laws of a State, the IRS will respect a taxpayer's treatment of the entity as either a partnership or a disregarded entity.  Rev. Proc. 2002-69, 2002-45

(continued...)

legal status of petitioners' corporations and petitioners cannot
be disregarded simply because petitioners own 100 percent of the
stock of their corporations. The corporate employment tax funds
were owned by petitioners' corporations at the time of the
alleged embezzlement. Petitioners' corporations did not transfer
ownership of the funds to SWAS. Rather, the funds were
transferred to SWAS for administrative convenience so that SWAS
could deposit the funds with the IRS. Accordingly, the corporate
employment tax funds belonged to petitioners' corporations, not
petitioners or SWAS. Petitioners never acquired such ownership
of the corporate employment tax funds as would entitle them to a
theft loss deduction for the alleged embezzlement. Any theft
loss deduction can be claimed properly only by petitioners'
corporations.

By a parity of reasoning, petitioners are not entitled to a
deduction under section 162(a) for the corporate employment taxes
and interest thereon they paid the IRS out of their own pockets.
Business expenses deductible from gross income include the
ordinary and necessary expenditures directly connected with or
pertaining to the taxpayer's trade or business. Sec. 1.162-1(a),
Income Tax Regs. The employees' shares of the corporate

---

8(...continued)
I.R.B. 831. Petitioners, who are husband and wife, owned SWAS as
community property under the laws of Texas. Petitioners'
classification of SWAS as a sole proprietorship or disregarded
entity is consistent with Rev. Proc. 2002-69, supra.

employment taxes were paid out of, and as part of, the salaries of the employees of petitioners' corporations and were an ordinary and necessary expense directly connected with the businesses of petitioners' corporations. The corporations' shares of the corporate employment taxes were also ordinary and necessary expenses directly connected with the businesses of petitioners' corporations. Petitioners' corporations are legal entities separate and distinct from petitioners. Petitioners' corporations, not petitioners, were the <u>taxpayers</u> entitled to any section 162(a) deduction for the corporate employment tax payments.

Furthermore, the trade or business of a corporation is not that of its shareholders; shareholders do not generally engage in a trade or business when they invest in the stock of a corporation. <u>Whipple v. Commissioner</u>, 373 U.S. 193, 202 (1963); <u>Betson v. Commissioner</u>, 802 F.2d 365, 368 (9th Cir. 1986), affg. T.C. Memo. 1984-264. A shareholder cannot convert a business expense of his corporation into a business expense of his own simply by agreeing to bear such an expense, <u>Harding v. Commissioner</u>, T.C. Memo. 1970-179, or by failing to seek reimbursement, <u>Podems v. Commissioner</u>, 24 T.C. 21 (1955). Consequently, petitioners' payments of the obligations of their corporations are not ordinary and necessary as required by section 162(a). See <u>Deputy v. du Pont</u>, <u>supra</u>; <u>Betson v.</u>

Commissioner, supra; Gantner v. Commissioner, 91 T.C. 713, 725 (1988); Lohrke v. Commissioner, 48 T.C. 679, 684 (1967).[9]

The facts of this case indicate that petitioners made the corporate employment tax payments out of their own pockets in their capacities as stockholders of their corporations. They did so with the purpose of keeping their corporations in business without incurring Federal tax penalties. There is no evidence in the record that petitioners promoted their own separate businesses when they paid their corporations' employment taxes. Petitioners do not qualify for any of the exceptions to the general rule that payments by stockholders of the obligations of their corporations are not ordinary and necessary expenses of the stockholders as required by section 162(a).

Finally, a payment by a taxpayer of interest on another's obligation generally is not deductible by the taxpayer. Williams v. Commissioner, 3 T.C. 200, 202 (1944); Automatic Sprinkler Co. of Am. v. Commissioner, 27 B.T.A. 160, 161 (1932). Therefore,

---

[9]Petitioners may deduct a payment they made on behalf of a corporation if it is an ordinary and necessary expense of a trade or business they own. Betson v. Commissioner, 802 F.2d 365 (9th Cir. 1963), affg. T.C. Memo. 1984-264; Gould v. Commissioner, 64 T.C. 132, 134-135 (1975); Lohrke v. Commissioner, 48 T.C. 679, 688-689 (1967). If the expenditure is appropriate to protect or promote that trade or business, the expense may be deductible by the individual paying it. Gould v. Commissioner, supra; Lohrke v. Commissioner, supra. However, a taxpayer may not deduct payments made with the purpose of keeping in business a corporation in which the taxpayer holds an ownership interest. Betson v. Commissioner, supra; Lohrke v. Commissioner, supra.

petitioners are not entitled to deductions for payments on behalf of their corporations of interest on the unpaid corporate employment taxes.

Petitioners' payments of the corporate employment taxes and interest thereon in their capacities as shareholders were actually capital contributions to their corporations.  Payments of the expenses of a corporation by a shareholder generally "constitute either a loan or a contribution to the capital of the corporation and are deductible, if at all, by the corporation." Rink v. Commissioner, 51 T.C. 746, 751 (1969); see also sec. 263; Betson v. Commissioner, supra at 368; Gould v. Commissioner, 64 T.C. 132, 134 (1975); Koree v. Commissioner, 40 T.C. 961, 966 (1963); Jenkins v. Commissioner, T.C. Memo. 1983-667; sec. 1.263(a)-2(f), Income Tax Regs. (voluntary contributions by shareholders for any corporate purpose are nondeductible capital expenditures).  Petitioners' capital contributions did not thereby entitle them to step into the shoes of their corporations to claim ownership of the corporate employment tax funds for purposes of a corporate deduction for a theft loss or to claim deductions of corporate employment taxes reserved only for their corporations.[10]

---

[10]On their 1993 and 1994 individual income tax returns, petitioners claimed theft loss deductions for the embezzlement of corporate employment taxes they "held as trustees" on behalf of their corporations.  In their briefs, petitioners did not explain
(continued...)

B.    Whether Embezzlement Actually Occurred

In their answering brief, petitioners claim they were obligated to their corporations for unpaid corporate employment taxes; they deny respondent's argument that the corporate employment tax funds belonged to petitioners' corporations. Respondent argues that even if petitioners owned the corporate employment tax funds, they have not proven the alleged theft.[11]

Petitioners argue that the following evidence they introduced proves theft:  (1) The agreed judgment, (2) Mr. Kanz's admission of the crime, (3) Ms. Simpson's analysis, and (4) petitioners' claim that they obtained some of Mr. Kanz's bank statements and copies of cashier's checks made payable to Mr. Kanz that correspond in time and amount with some of the checks that were allegedly embezzled.

Petitioners bear the burden of proving that theft occurred. Rule 142(a); Welch v. Helvering, 290 U.S. at 115.  For tax purposes, whether a theft loss has been sustained depends upon

_____

[10](...continued)
the legal theory behind their claim that they held the corporate employment taxes as "trustees".  Inasmuch as petitioners have not addressed this issue in their briefs, they have conceded any arguments they could have made; we have no obligation to speculate what arguments they might have made.

[11]Respondent has made this alternative argument in response to petitioners' argument that their corporations did not own the corporate employment tax funds.  Although we have already decided that petitioners' corporations did in fact own the funds for purposes of taking a theft loss deduction, we shall consider this issue for purposes of completeness.

the law of the jurisdiction in which the loss occurred. Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956); Monteleone v. Commissioner, 34 T.C. 688, 692 (1960). The exact nature of a theft, whether it be larceny, embezzlement, obtaining money by false pretenses, or other wrongful misappropriation of property of another, is of little importance provided it constitutes a theft. Edwards v. Bromberg, supra; see also sec. 1.165-8(d), Income Tax Regs. Petitioners' alleged theft loss occurred in Texas. The Texas Penal Code provides the following definition of theft: "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. * * * Appropriation of property is unlawful if: (1) it is without the owner's effective consent". Tex. Penal Code Ann. sec. 31.03 (Vernon 2002).

A number of tax cases have addressed this specific issue and isolated the relevant factors to employ in deciding whether a taxpayer has proved that theft actually occurred. In Monteleone v. Commissioner, supra, we held the taxpayer was entitled to a theft loss deduction. In that case, the taxpayer lent money to an individual who defrauded her. The taxpayer filed a civil suit and pressed criminal charges against the individual. In the civil action, the individual admitted the fraud and agreed to make restitution to the taxpayer in monthly installments that he actually paid for 3 months. The criminal action was dismissed

for lack of reasonable or probable cause to indict.  We found the individual's admission of theft was sufficient proof, under the circumstances of the case, that the taxpayer had sustained a theft loss.

In Qualley v. Commissioner, T.C. Memo. 1976-208, we decided the taxpayer had not proven that theft occurred.  The taxpayer corporation claimed a theft loss deduction for money diverted to a separate bank account by its accountant.  To prove theft had occurred, the taxpayer submitted the testimony of its president and two State court judgments entered in its favor pursuant to settlement agreements between the parties.  The president claimed he had not authorized certain checks.  The president asserted the "unauthorized" checks were written for the accountant's personal benefit.  We ruled the taxpayer had not provided sufficient proof of theft.  The president's testimony alone was not sufficient. The lack of commencement of any criminal proceeding against the accountant cast doubt on the reality of the alleged theft.  The taxpayer failed to show any proof the monetary amount of the alleged theft loss was the same as the amount claimed.  We found the two State court judgments were not sufficient proof that a theft occurred because the cases had been settled.

We now evaluate the evidence petitioners introduced in support of the alleged theft.

1. Agreed Judgment

Petitioners claim the agreed judgment is evidence that theft occurred. As a result of the agreed judgment, SWAS was entitled to recover from Mr. Kanz for what he admitted were embezzlement losses. In Qualley v. Commissioner, supra, we held the introduction of lower court cases on the issue of theft was not sufficient proof of theft because the cases were settled. Similarly, in this case, the agreed judgment was entered as a result of a settlement between petitioners and Mr. Kanz and does not prove theft actually occurred.[12]

2. Mr. Kanz's Admissions

Petitioners argue Mr. Kanz's admissions prove theft occurred. Even though an admission was sufficient to prove theft in Monteleone v. Commissioner, supra, the facts and circumstances in this case are distinguishable. The circumstances of Mr. Kanz's admissions indicate he was not forthright. Mr. Kanz settled SWAS v. Kanz in 1993. At about the same time, he and Mr. Grothues executed the collateral agreement in which Mr. Grothues agreed not to attempt collection in exchange for Mr. Kanz's assistance in resolving petitioners' tax problems.[13] Both Mr.

_____

[12]Petitioners did not argue that collateral estoppel could prohibit respondent from seeking another determination of the litigated issue in this subsequent action.

[13]Even though the collateral agreement was not dated, according to the stipulation of facts submitted by the parties,
(continued...)

Grothues and Mr. Kanz contemplated the simultaneous execution of the settlement upon which the agreed judgment was entered and the collateral agreement.  These facts indicate that at the time Mr. Kanz admitted the theft, he knew that he would not be liable to pay the judgment.

Also, Mr. Kanz's admissions are a moving feast of inconsistencies.  From 1993 to 1995, Mr. Kanz denied he misappropriated any funds.  In January 2002, Mr. Kanz admitted to misappropriating some of the money but not as much as stated in the agreed judgment.  Then in February 2002, Mr. Kanz admitted all the findings in the agreed judgment.  These inconsistencies undermine the credibility of Mr. Kanz's admissions.

Even though Mr. Kanz has not helped petitioners solve their tax problems, petitioners have not filed a claim for breach of contract by Mr. Kanz in order to collect on the judgment.  These are all acts a reasonable person might do in efforts to recover stolen property from a thief.  Although it is improbable Mr. Kanz would admit to an act which would lead to civil liability, his friendship with petitioners and his belief that the collateral agreement protected him from collection suggest he made his admissions in an effort to help petitioners with their tax problems.  His admissions do not prove theft occurred.

---

[13](...continued)
the collateral agreement was executed at the time of the agreed judgment.

### 3.  Ms. Simpson's Analysis

Ms. Simpson's analysis of petitioners' accounts does not prove theft.  Ms. Simpson's analysis merely shows the missing amounts of the corporate employment tax funds.  Her analysis does not set forth any conclusions with regard to whether funds were in fact embezzled by anyone.  Therefore, Ms. Simpson's testimony does not prove embezzlement occurred.

### 4.  Missing Evidence

Both petitioners and Ms. Simpson claim that, during Ms. Simpson's engagement, petitioners obtained some of Mr. Kanz's bank statements and copies of cashier's checks payable to Mr. Kanz that correspond in time and amount with some of the checks that were allegedly embezzled.

Petitioners have the burden of proof.  Petitioners have not introduced any evidence, documentary or otherwise, such as copies of Mr. Kanz's bank statements or copies of cashier's checks made payable to him.  Petitioners claim the documentary evidence was taken and retained by Mrs. Grothues's criminal and civil lawyers.  There is nothing in the record and no other evidence to substantiate petitioners' claim to this effect.

Petitioners have failed to meet their burden of proving that theft occurred.

C. <u>Lack of Reasonable Certainty No Recovery Can Be Made</u>

Even if the embezzlement claim belonged to petitioners and they proved that theft occurred, it could not be ascertained with reasonable certainty that there was no reasonable prospect of recovery from Mr. Kanz, as required by section 1.165-1(d)(3), Income Tax Regs.

There is a reasonable prospect of recovery when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor. <u>Estate of Scofield v. Commissioner</u>, 266 F.2d 154, 159 (6th Cir. 1959), affg. in part and revg. in part 25 T.C. 774 (1956); <u>Ramsey Scarlett & Co. v. Commissioner</u>, 61 T.C. 795, 811-812 (1974), affd. 521 F.2d 786 (4th Cir. 1975).

Mr. Kanz told petitioners he had no assets or inheritance to pay the judgment, and they claim they believed the testimony of a man who allegedly embezzled more than $186,000 from them. Petitioners have not provided any independent evidence that Mr. Kanz no longer has any assets, net worth, or opportunity for an inheritance with which to pay the judgment. To this date, more than 8 years after the collateral agreement was executed, Mr. Kanz has not fulfilled his part of the bargain. Yet, petitioners have not attempted to collect the judgment from Mr. Kanz. Petitioners have not satisfied their burden of proving it could

be ascertained with reasonable certainty they could recover nothing from Mr. Kanz.

For all the foregoing reasons, petitioners are not entitled to a theft loss deduction under section 165: Petitioners are not the owners of the allegedly embezzled funds, petitioners have failed to prove that theft occurred, and petitioners have failed to prove there was no reasonable prospect of recovery.

Issue 3.  Addition to Tax Under Section 6651(a)(1) for Failure To Timely File the 1995 Return

On April 15, 1996, petitioners filed Form 4868 extending the due date of their 1995 tax return to August 15, 1996. Petitioners claim they filed a Form 2688 which extended the time to file their 1995 tax return to October 15, 1996.  They then mailed their 1995 tax return on October 15, 1996, and respondent received it on October 17, 1996.  Petitioners did not attach a copy of Form 2688 to their 1995 tax return, which they claim was an "oversight".  Exhibit 8-P is a photocopy of the Form 2688 allegedly submitted by petitioners.  Respondent claims his records do not indicate receipt of a Form 2688 from petitioners. Consequently, respondent claims that petitioners are liable for an addition to tax under section 6651(a)(1) because they did not timely file their 1995 tax return, which was due on August 15, 1996.

Petitioners contend that Form 2688 was timely mailed by August 15, 1996, and that it was approved by the IRS.  They point

to the fact that Exhibit 8-P has a receipt stamped "August 22, 1996" and a circle around the stamp which they claim is a circular "quick-type" signature.  They also point out a mark in the top check box on the lower left, which they claim is a check mark by the IRS indicating that the Form 2688 was approved.  Respondent argues that the Form 2688 which petitioners claim to have filed is questionable because the circular mark is not a signature and respondent's records do not indicate receipt of the Form 2688.

When a return is required to be filed on or before a prescribed date and the return is delivered by the U.S. mail after that date, the date of the U.S. postmark is deemed the date of delivery.  Sec. 7502.  One requirement imposed by section 7502 is, in essence, that a return will be deemed delivered on the postmark date only if the return is mailed on or before its due date.  In other words, timely mailing is timely filing.  See Emmons v. Commissioner, 92 T.C. 342, 346 (1989), affd. 898 F.2d 50 (5th Cir. 1990).

"Filing, generally, 'is not complete until the document is delivered and received.'"  Carroll v. Commissioner, T.C. Memo. 1994-229 (quoting United States v. Lombardo, 241 U.S. 73, 76 (1916)), affd. 71 F.3d 1228 (6th Cir. 1995).  Proof that a document has been sent by registered mail or certified mail and that the envelope was properly addressed would have constituted

prima facie evidence that the document was delivered.  See sec. 301.7502-1(d)(1), Proced. & Admin. Regs.  Petitioners, however, did not send the Form 2688 by certified or registered mail.

Notwithstanding a taxpayer's failure to use certified or registered mail, "proof that a document was properly mailed will create a 'presumption that the document was delivered and "was actually received by the person to whom it was addressed."'" Carroll v. Commissioner, supra (quoting Estate of Wood v. Commissioner, 92 T.C. 793, 798 (1989) (quoting Hagner v. United States, 285 U.S. 427, 430 (1932)), affd. 909 F.2d 1155 (8th Cir. 1990)).

When a taxpayer does not have documentary evidence that a form was mailed, we have in some circumstances allowed indirect evidence to prove that the form was mailed.  See Estate of Wood v. Commissioner, supra; Mitchell Offset Plate Serv., Inc. v. Commissioner, 53 T.C. 235, 240 (1969); Hiner v. Commissioner, T.C. Memo. 1993-608; Shuford v. Commissioner, T.C. Memo. 1990-422 (Commissioner can submit extrinsic evidence to prove timely mailing of notice of deficiency), affd. without published opinion 937 F.2d 609 (6th Cir. 1991).  Direct testimony a postmark was affixed may be sufficient to prove mailing.  Estate of Wood v. Commissioner, supra.

Standard operating procedures require stamping the "received" date on the face of Form 2688.  See Internal Revenue

Manual sec. 20.1.2.1.2.3 (RIA 2002). Petitioners have provided indirect evidence the Form 2688 was mailed and received by respondent. First, both petitioners and respondent agreed petitioners would testify Form 2688 was timely mailed. Second, the Form 2688 submitted as Exhibit 8-P is stamped "Received 08/22/96". Notwithstanding that Exhibit 8-P is a photocopy and the date stamp is not completely legible, the date stamp on the Form 2688 is almost identical to the stamps on petitioners' 1993 and 1994 Forms 1040, U.S. Individual Income Tax Return. Contrary to respondent's argument, the circular "quick-type" signature neither proves nor disproves that respondent has received a document; the 1993 and 1994 Forms 1040 were date stamped without any signature or mark. Finally, respondent did make a mark in the top check box on the lower left which is a check mark by the IRS indicating that the Form 2688 was approved. The IRS has been known, on occasion, to make illegible postmark date notations on tax returns, misplace the mailing envelope bearing the postmark, and even lose returns. Columbia Gas Sys., Inc. v. United States, 70 F.3d 1244, 1247 (Fed. Cir. 1995) (return lost); Borsody v. Commissioner, T.C. Memo. 1993-534 (illegible date and envelope lost), affd. 78 AFTR 2d 6045, 96-2 USTC par. 50415 (4th Cir. 1996); Collins v. Commissioner, T.C. Memo. 1993-168 (envelope lost). Respondent's records may not show receipt of the Form 2688 because the IRS Service Center lost or misplaced

petitioners' Form 2688 before its receipt was logged into the records of the Service Center.

We find petitioners are not liable for the addition to tax under section 6651(a)(1) for failure to timely file their 1995 return.

To give effect to the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>