# United States Court of Appeals for the Federal Circuit

———————————

**FRANK GAYLORD,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

———————————

2011-5097

———————————

Appeal from the United States Court of Federal Claims in case no. 06-CV-539, Judge Thomas C. Wheeler

———————————

Decided: May 14, 2012

———————————

FRANK P. PORCELLI, Fish & Richardson, P.C., of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief was HEIDI E. HARVEY.

SCOTT BOLDEN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, and JOHN J. FARGO, Director. Of counsel on the brief were GARY L. HAUSKEN, Assistant Director, DAVID C. BELT, and MICHAEL F. KIELY, United States Postal Service, of Washington, DC.

---

Before BRYSON, MAYER and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

Frank Gaylord appeals from the judgment of the Court of Federal Claims awarding him $5,000 for the United States Postal Service's copyright infringement of his statues. Because the trial court incorrectly limited Mr. Gaylord's damages to the Postal Service's highest past license payment and denied prejudgment interest, we vacate and remand for a determination of the market value of the Postal Service's infringing use and an award of prejudgment interest.

## BACKGROUND

Mr. Gaylord is the creator of "The Column," a group of nineteen stainless steel sculptures representing a platoon of soldiers. The Column is the centerpiece of the Korean War Veterans' Memorial on the National Mall in Washington, D.C. In 2002, the United States Postal Service issued a 37-cent stamp commemorating the 50th anniversary of the armistice of the Korean War. The stamp featured a photograph of The Column, which the Postal Service licensed from photographer John Alli. The Postal Service issued roughly 86.8 million of the stamps, sold retail goods carrying the stamp image, and licensed the stamp image to retailers. The Postal Service did not seek or obtain Mr. Gaylord's permission to depict The Column on the stamp or the related merchandise.

In 2006, Mr. Gaylord sued the United States under 28 U.S.C. § 1498(b) for copyright infringement. In *Gaylord v. United States*, we held that Mr. Gaylord owned the copyright to The Column and that the Postal Service was liable for infringement. 595 F.3d 1364, 1381 (Fed. Cir.

2011).  We identified three general classes of infringing items: (1) stamps that were used to send mail; (2) unused stamps retained by collectors; and (3) retail goods featuring an image of the stamp.  *Id.* at 1371.  We remanded for a determination of damages.[1]  *Id.*

On remand, the Court of Federal Claims rejected Mr. Gaylord's claim for a 10% royalty on about $30.2 million in revenue allegedly generated by the Postal Service's infringing use, as well as his claim for prejudgment interest.  *Gaylord v. United States*, 98 Fed. Cl. 389, 390, 392-93 (2011).  The court reasoned that neither 28 U.S.C. § 1498(b), which waives the United States' sovereign immunity for copyright infringement, nor the copyright infringement statute, 17 U.S.C. § 504, authorizes a royalty-based award for copyright infringement.  *Id.* at 392.  Instead, the court concluded that the proper measure of damages is "the approach in *Steve Altman Photography* of employing a 'zone of reasonableness' to determine the copyright owner's actual damages."  *Id.* at 391 (citing *Steve Altman Photography v. United States*, 18 Cl. Ct. 267, 279 (1989)).

Applying this framework, the Court of Federal Claims determined that the "zone of reasonableness" for the value of a license on Mr. Gaylord's copyright was between $1,500 and $5,000.  *Id.* at 391-92.  To set the lower bound, the court relied on the fact that the Postal Service paid photographer John Alli $1,500 to license the photo he took of The Column.  *Id.*  To set the maximum amount of available damages, the court relied exclusively on testimony by Mr. McCaffrey, the Postal Service's Manager of Stamp Development, that the Postal Service had never

---

[1]    On remand, the parties relied on the original trial record to support their damages arguments and did not submit any new damages evidence.

paid more than $5,000 to license an existing image for use on a stamp. *Id.* at 392. Based on these facts, the court awarded Mr. Gaylord a one-time royalty of $5,000, which it determined was "reasonable and just compensation" for the government's infringement. *Id.* The court explained that it was awarding Mr. Gaylord the highest amount within the "zone of reasonableness" because he was deprived of the opportunity to negotiate. *Id.*

The court also held that, even if reasonable royalties were allowed, Mr. Gaylord's request for a 10% royalty was unreasonable because $3 million is outside the zone of reasonableness. The court based this conclusion on the Postal Service's assertion that it had a policy against paying a royalty for stamp designs. *Id.* The trial court rejected Mr. Gaylord's claim for prejudgment interest because it found no explicit waiver of sovereign immunity allowing such a recovery. *Id.* Mr. Gaylord appeals the court's decision that he is not entitled to a reasonable royalty or prejudgment interest. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"On appeal from the Court of Federal Claims, this court reviews legal conclusions *de novo* and fact findings for clear error." *Columbia Gas Sys., Inc. v. United States*, 70 F.3d 1244, 1246 (Fed. Cir. 1995). "We review a damages award by the Court of Federal Claims for an abuse of discretion." *Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1377 (Fed. Cir. 2004).

## I. Damages

Mr. Gaylord argues that the trial court erred as a matter of law by holding that royalty damages are not available in copyright cases. He argues that other circuits allow hypothetical licenses as a measure of actual dam-

ages, and because reasonable royalties are the presumptive award under 28 U.S.C. § 1498(a), they should also be the presumptive award under § 1498(b). Mr. Gaylord argues that the Postal Service's internal policies should not foreclose his request for a royalty-based award. He also contends that using the Postal Service's highest past payment as the maximum amount recoverable was erroneous because the court should have considered real-world evidence of a reasonable royalty. For example, at trial Mr. Gaylord introduced evidence of his past licenses of The Column for various collectibles, such as t-shirts and miniature statues. He argues that the 10% royalty he typically received under such agreements accurately represents the fair market value of a license to his work. Mr. Gaylord also argues that his stamp was more popular than others, and thus warrants a higher license fee than the trial court awarded.

The Postal Service argues that the court awarded Mr. Gaylord "the highest lost license fee supported by the evidence" and "correctly employed a willing buyer/willing seller analysis and awarded Mr. Gaylord a lost license fee in the form of a $5,000 one-time lump-sum royalty, the highest 'amount he would have received as a one-time fee in negotiations with the Postal Service.'" Appellee's Br. 12 (citing *Gaylord*, 98 Fed. Cl. at 392). It argues that making royalty damages presumptive in copyright cases would make § 1498(b)'s allowance of minimum statutory damages superfluous. The Postal Service calls Mr. Gaylord's request for $3 million based on a 10% license speculative, arguing that Mr. Gaylord relies upon licenses that are not comparable to the infringing use. It also argues that the Korean War stamp was actually the least retained commemorative stamp issued around the same time. The Postal Service argues that the $5,000 award is an accurate measure of "just compensation" because it

represents "the market value of the property at the time of the taking." *Id.* at 12, 19.

Section 1498(b), which waives the United States' sovereign immunity for copyright infringement, states:

> whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his *reasonable and entire compensation as damages for such infringement, including the minimum statutory damages* as set forth in [17 U.S.C. § 504(c)] . . . .

28 U.S.C. § 1498(b) (emphasis added). In *Leesona Corp. v. United States*, our predecessor court interpreted "reasonable and entire compensation" in the context of § 1498(a), which waives the United States' sovereign immunity for patent infringement. 599 F.2d 958 (Ct. Cl. 1979). The *Leesona* court found "no clear indication that the government intended to assume responsibility for any payment other than the just compensation required by the fifth amendment." *Id.* at 968. The *Leesona* court thus limited "reasonable and entire compensation" under § 1498(a) to a reasonable royalty for "a compulsory compensable license in the patent" or, when that "cannot be ascertained, another method of estimating the value of the lost patent." *Id.* Punitive damages that may be available in a suit under Title 35, such as enhanced damages and attorneys' fees, were excluded because they grant more than "just compensation." *Id.* at 968. The court explained that "the proper measure . . . is what the owner has lost, not what the taker has gained." *Id.* at 969.

This analysis applies with equal force in the § 1498(b) context, where courts must determine just compensation for the plaintiff's loss when the government takes what is essentially a compulsory, non-exclusive license on the plaintiff's copyright. "Reasonable and entire compensation" entitles copyright owners to compensatory damages, including the minimum statutory damages, but not to non-compensatory damages. We conclude that the methods used to determine "actual damages" under the copyright damages statute, 17 U.S.C. § 504, are appropriate for measuring the copyright owner's loss. When, as in this case, the plaintiff cannot show "lost sales, lost opportunities to license, or diminution in the value of the copyright," many circuits award actual damages based on "the fair market value of a license covering the defendant's use." *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 164, 172 (2d Cir. 2001); *see also Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 353, 359-60 (6th Cir. 2007); *Jarvis v. K2 Inc.*, 486 F.3d 526, 533-34 (9th Cir. 2007); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003). The value of this license should be calculated based on a hypothetical, arms-length negotiation between the parties. *See, e.g., Jarvis*, 486 F.3d at 533 ("[I]n situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.").

It is incorrect in a hypothetical negotiation inquiry for a court to limit its analysis to only one side of the negotiating table because the court's task is to determine the "reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *See On Davis*, 246 F.3d at 167. The trial court erred in this case by restricting its focus to the Postal

Service's past payments: $1,500-$5,000. Defendants cannot insulate themselves from paying for the damages they caused by resting on their past agreements and by creating internal "policies" that shield them from paying fair market value for what they took. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) ("[W]hat an infringer would prefer to pay is not the test for damages."). Instead, the trial court must look at the evidence presented by both sides to determine the fair market value of a license to which the parties would have agreed. Hence, while the evidence may indicate that the Postal Service has not paid more than $5,000, it is equally clear that Mr. Gaylord has consistently licensed images of The Column for retail and commemorative items at approximately 10%. *See, e.g.*, J.A. 1180-81, 1201, 1721.

The trial court legally erred in this case by failing to calculate the fair market value of a license based on a hypothetical negotiation between Mr. Gaylord and the Postal Service. In applying the so-called "zone of reasonableness" test, the court improperly limited its inquiry to the Postal Service's past licenses and, as a result, erroneously capped Mr. Gaylord's maximum damages without considering other evidence supporting a higher award. Moreover, the court gave undue weight to the Postal Service's self-serving testimony that it is prohibited from paying an ongoing royalty on stamps, and as a result failed to consider whether the fair market value of a license would include an ongoing royalty rather than a one-time fee. *See Gaylord*, 98 Fed. Cl. at 392. We thus vacate and remand for the court to determine the fair market value of a license for the full scope of the Postal Service's infringing use based on a hypothetical negotiation with Mr. Gaylord.

On remand, the trial court must consider *all* evidence relevant to a hypothetical negotiation rather than limit-

ing its analysis to the Postal Service's past licenses for different works or to the Postal Service's internal policies.[2] For example, Mr. Gaylord presented evidence that he typically agreed to a royalty rate of 8-10% in past agreements licensing his work for use on various collectibles, such as miniatures and t-shirts. In one such agreement, Mr. Gaylord earned $16,666.66 up front and a 10% royalty on all sales. The record also shows that Mr. Alli entered a license agreement with the architects of the Korean War Veterans' Memorial, who he incorrectly believed held the copyright on The Column. Mr. Alli agreed to pay a 10% royalty to the architects for his sales and licensing of his photograph of The Column, which totaled $31,766.50 up to the date of the agreement.[3] Finally, the Postal Service itself licensed the stamp image to third parties for use on retail goods in exchange for a royalty of 8% of sales. The Postal Service earned $17,831.93 under those agreements. Such evidence of past license agreements for the work in question is certainly relevant to a hypothetical negotiation analysis.

The trial court's analysis of a hypothetical negotiation between Mr. Gaylord and the Postal Service may lead it

---

[2] Because the determination of the license's fair market value is a fact-dependent inquiry, the parties and the court may find it necessary to reopen the record. For example, the court may find it useful to have testimony explaining how to compare Mr. Gaylord's previous licenses to the hypothetical license in this case.

[3] Mr. Gaylord sued Mr. Alli for copyright infringement for sales of the photograph, and in a settlement agreement Mr. Gaylord agreed to pay Mr. Alli 10% of any recovery from his suit against the government in exchange for 10% of Mr. Alli's future sales of his photograph and 25% of any compensation Mr. Alli received by licensing the photograph.

to conclude that different license fees are appropriate for the three categories of infringing goods we identified in our previous opinion: (1) stamps used to send mail; (2) unused stamps purchased by collectors; and (3) commercial merchandise featuring an image of the stamp. *Gaylord*, 595 F.3d at 1371. For stamps used as postage, the trial court must determine whether an ongoing royalty or a one-time fee more accurately captures the fair market value of a license. For example, the court may consider evidence regarding whether people used the stamp at issue specifically because it featured an image of The Column or whether the stamp's value is primarily attributable to its ability to send mail rather than to the image it depicts. While it is certainly permissible for the court to conclude that a lump sum license might be appropriate, the court should not arbitrarily cap this award at $5,000 simply because the Postal Service claims it has never paid more to license a copyright for use on a stamp.

The analysis likely will differ for the value attributable to the Postal Service's use of Mr. Gaylord's work on the estimated $5.4 million of sold but unused stamps, including those retained by collectors, which represent nearly pure profit for the Postal Service. It may be pertinent to examine whether the number of unused stamps is greater for this stamp than for the average stamp issued by the Postal Service. Collectors may retain stamps for any number of reasons, including a preference for the image itself or a desire to obtain a particular stamp to complete a collection. *See, e.g.*, J.A. 1217, 1262-63. The court should thus consider whether the evidence supports an ongoing royalty for unused stamps, and at what rate. We, however, do not rule out the possibility that a one-time, paid-up license accurately reflects the fair market value of a license for both the used and unused stamps.

The commercial merchandise seems distinctly different from the stamps. The Postal Service itself licensed the stamp image to third parties to be used on various retail goods for an 8% royalty, and it earned $17,831.93 in royalty payments. This is completely consistent with the 8-10% royalty rate Mr. Gaylord typically earned for licensing his work to third parties to be used on retail goods. It is also similar to the 10% royalty Mr. Alli agreed to pay for selling prints of his photograph of The Column. Based on these facts, an ongoing royalty appears to be appropriate for retail goods depicting Mr. Gaylord's work, particularly those on which the Postal Service earned an 8% ongoing royalty. The trial court should also consider whether the evidence similarly supports an ongoing royalty for the $330,000 in revenue the Postal Service made from direct sales of pins, postcards, magnets, framed art, cancellation keepsakes, and other philatelic collectibles depicting the stamp. The court should keep in mind that Mr. Gaylord's recovery is not limited to the Postal Service's actual profits. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004). Indeed, the court may find that a hypothetical negotiation between the parties would result in a higher ongoing royalty than the rate earned by Mr. Gaylord or the Postal Service under past agreements.

## II. Prejudgment Interest

Mr. Gaylord argues that he is entitled to prejudgment interest. He cites *Waite v. United States*, in which the Supreme Court held that sovereign immunity does not prevent the award of prejudgment interest under the precursor to § 1498 because "reasonable and entire compensation" includes delay compensation. 282 U.S. 508, 508-09 (1931). The Postal Service concedes that the trial court failed to consider *Waite*, and thus that it erred by holding that sovereign immunity bars the award of pre-

judgment interest under § 1498. The Postal Service argues, however, that prejudgment interest should be denied in this case because Mr. Gaylord "cited no law or facts" in support of his request at trial. The Postal Service's waiver argument is incorrect. Mr. Gaylord twice explicitly cited *Waite* to the trial court when arguing his entitlement to prejudgment interest. Mr. Gaylord is entitled to prejudgment interest because it is necessary to make his compensation complete. We vacate the trial court's decision denying prejudgment interest and remand.

**VACATED AND REMANDED.**

COSTS

Costs to Plaintiff-Appellant.