# United States Court of Appeals for the Federal Circuit

---

**BITMANAGEMENT SOFTWARE GMBH,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1506

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00840-EJD, Senior Judge Edward J. Damich.

---

Decided: January 7, 2025

---

MARK CHRISTOPHER FLEMING, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for plaintiff-appellant. Also represented by ZAKI ANWAR; BRENT GURNEY, Washington, DC.

SCOTT DAVID BOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, GARY LEE HAUSKEN; PATRICK C. HOLVEY, Criminal Division, United States Attorney's Office for the District of Columbia, United States Department of Justice, Washington, DC; SHIVAUN

WHITE, Naval Facilities Engineering Systems Command, United States Navy, Washington, DC.

_____

Before DYK, STOLL, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Bitmanagement Software GmBH ("Bitmanagement") appeals the damages judgment it received in the United States Court of Federal Claims as compensation for copyright infringement committed by the United States Navy ("Navy"). The Court of Federal Claims determined that a hypothetical negotiation between the parties would have resulted in a license to Bitmanagement's software at a cost of $154,400, which it ordered the Navy to pay Bitmanagement. Finding no abuse of discretion, we affirm.

I

Bitmanagement "develops software for rendering three-dimensional graphics." *Bitmanagement Software GmBH v. United States*, 989 F.3d 938, 941 (Fed. Cir. 2021) ("*Bit II*"). At issue in this case is Bitmanagement's "BS Contact Geo" software, which is useful in conjunction with a Navy software platform called SPIDERS 3D. Used together, BS Contact Geo and SPIDERS 3D create a virtual reality environment in which Navy employees can view images of Naval installations, bases, and facilities in three dimensions.

In 2008, Bitmanagement, through a third-party reseller, provided the Navy with 100 "seat licenses" (also known as "PC licenses") for BS Contact Geo. A "seat license" allows only "one installation of the software onto one computer per license." *Id.* Hence, with 100 seat licenses, the Navy was permitted to install BS Contact Geo on 100 specific computers.

In 2012, the parties switched the Navy from seat licenses to a "floating license." A "floating license" allows

the licensed user to access the software on a wide range of computers, so long as measures are taken to limit the simultaneous usage of the program to only the number of individual users permitted by the license. *See id.* at 943. The Navy's first floating license with Bitmanagement allowed the Navy to install BS Contact Geo on as many computers as it wished but capped the maximum usage at 20 users at any one time. To ensure the Navy adhered to the cap in the floating license, Bitmanagement and the Navy agreed that the Navy would use a tracking application, called "Flexera." As we explained when this case was before us previously:

> Flexera is a server-based program used to limit the number of simultaneous users of a "Flexera enabled" – or "FlexWrapped" – software based on the number of available licenses. When a user opens a FlexWrapped program, the program alerts the Flexera tracking server that the program is in use. The FlexWrapped program sends a similar alert when the program is no longer in use. The Flexera license manager thus limits the number of users of FlexWrapped software to the number of licenses that a user owns.

*Id.* In other words, Flexera "would limit the number of simultaneous users" by "allowing the program [i.e., BS Contact Geo] to run only if the number of persons using the program is less than the number of available licenses." J.A. 3-4.

In 2013, the Navy began to deploy BS Contact Geo widely throughout the organization. Eventually, it was accessible on more than 429,000 Navy computers. Flexera, however, failed to operate as intended; it did not restrict the number of simultaneous users of BS Contact Geo to the number of licenses the Navy had purchased from Bitmanagement.

In July 2016, Bitmanagement sued the United States ("government") in the Court of Federal Claims, alleging that the Navy had infringed its copyright on BS Contact Geo.  In preparation for trial, Bitmanagement moved *in limine* to exclude the government's damages expert, David Kennedy, arguing he had used the wrong legal test by calculating damages based on the amount of *usage* of BS Contact Geo by Navy personnel rather than the number of *copies* the Navy had made of the software.  The Court of Federal Claims granted the motion and excluded Mr. Kennedy's testimony.  Following trial, the court granted judgment for the government, finding that the Navy had no liability for copyright infringement.

Bitmanagement appealed.  We agreed with the Court of Federal Claims that the Navy had an implied license to make copies of BS Contact Geo.  But we further held that the Navy's agreement to use Flexera to limit the number of simultaneous users of BS Contact Geo was a material condition of the implied license, a condition the Navy had breached.  We explained that "the Navy's failure to abide by the Flexera condition of that license renders its copying of the program copyright infringement." *Bit II*, 989 F.3d at 951.

We remanded the case to the Court of Federal Claims for it to calculate the damages the government owed Bitmanagement.  In doing so, we stated the following in footnote 5 of our opinion:

Because Bitmanagement's action is against the government, it is entitled only to "reasonable and entire compensation as damages . . . , including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code."  28 U.S.C. § 1498(b). . . .  Contrary to Bitmanagement's argument, *see* J.A. 10002 ¶ 5, it is not entitled to recover the cost of a seat license for each installation.  If Bitmanagement chooses not to

> pursue statutory damages, the proper measure of damages shall be determined by the Navy's actual usage of BS Contact Geo in excess of the limited usage contemplated by the parties' implied license. That analysis should take the form of a hypothetical negotiation. *See Gaylord v. United States*, 777 F.3d 1363, 1368-72 (Fed. Cir. 2015) [("*Gaylord III*")]; *Gaylord* [*v. United States*], 678 F.3d [1339,] 1342-45 [(Fed. Cir. 2012) ("*Gaylord II*")[1]]. As the party who breached the Flexera requirement in the implied license, the Navy bears the burden of proving its actual usage of the BS Contact Geo software and the extent to which any of it fell within the bounds of any existing license.

*Id.* at 951 n.5.

On remand, the Court of Federal Claims determined that footnote 5 was part of our mandate, leaving the trial court no choice but to follow it. J.A. 20-21 ("[T]he Federal Circuit has mandated that Plaintiff is not entitled to damages based on the 'cost of a seat license for each installation.'"). The court ordered the parties to submit supplemental briefing on damages, granted the government's motion to reconsider its prior exclusion of Mr. Kennedy, and reopened the record to permit him to testify. The court also offered Bitmanagement the opportunity to present additional damages-related evidence of its own, though Bitmanagement declined to do so.

---

[1]    In *Bit II*, 989 F.3d at 951 n.5, we referred to *Gaylord v. United States*, 678 F.3d 1339 (Fed. Cir. 2012), as "*Gaylord I.*" In our opinion today, for simplicity, we instead adopt the nomenclature employed by the Court of Federal Claims in the judgment we are reviewing (*see, e.g.*, J.A. 1) and refer to our 2012 *Gaylord* decision as "*Gaylord II.*"

In a post-trial opinion, the Court of Federal Claims awarded Bitmanagement $154,400 in damages, plus delay costs (which are not at issue in this appeal). Bitmanagement timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

We review damages awarded by the Court of Federal Claims for an abuse of discretion. *See Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1377 (Fed. Cir. 2004). "A court abuses its discretion when (1) the court's decision is clearly unreasonable, arbitrary or fanciful; (2) the decision is based upon an erroneous construction of the law; (3) the trial court's factual findings are clearly erroneous; or (4) the record contains no evidence upon which the court could have rationally based its decision." *Id*. at 1377-78 (internal quotation marks and citation omitted).

We review the Court of Federal Claims' legal conclusions de novo and its factual findings for clear error. *See Gaylord II*, 678 F.3d at 1342. "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

We review the trial court's interpretation of our prior mandate de novo. *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1369 (Fed. Cir. 2014).

III

Bitmanagement appeals the Court of Federal Claims' judgment awarding it only $154,400 as damages for the Navy's infringement of its copyrighted software, BS Contact Geo. Bitmanagement contends it is entitled to a judgment several orders of magnitude larger – specifically, $85,913,400 – and asks that we direct entry of judgment in that amount. Bitmanagement's principal argument is that

the Court of Federal Claims erred as a matter of law by failing to award damages for every copy of BS Contact Geo the Navy made. The trial court instead awarded damages based only on the use to which the Navy put the software, which in Bitmanagement's view is improper. Bitmanagement finds further error in the court's admission of Mr. Kennedy's testimony, its placement of the burden of showing the amount of Navy usage on Bitmanagement, and its failure to account for the fact that the Navy produced only incomplete documentation in discovery. We find no error in the Court of Federal Claims' judgment.

## A

### 1

Bitmanagement argues that the Court of Federal Claims erred by awarding damages based on the number of copies of BS Contact Geo that were *used* by the Navy, rather than for every copy of the software the Navy *made*. *See, e.g.*, Open. Br. 2-3 (arguing that Copyright Act "requires compensation for each infringing copy, as the other circuits to consider the issue have uniformly concluded"); *id.* at 28 ("The Court of Federal Claims erroneously failed to award damages for every infringing copy that the Navy made of Bitmanagement's software."); *id.* at 32 ("The Court of Federal Claims misapplied copyright law by awarding damages only for BS Contact Geo copies that were accessed, rather than for every infringing copy that the Navy made."). Bitmanagement contends it should receive a per-copy payment of $200 for each of the 429,567 copies made by the Navy, for a total amount of damages of $85,913,400. We disagree. The law does not compel such a result where the hypothetical negotiation would have proceeded on a primarily per-use (floating license) basis, and the trial court's rejection of a per-copy approach based on the record developed in this case is not clearly erroneous.

The law does not require that every award of copyright damages be on a per-copy basis.  Title 28 of the United States Code, § 1498(b) provides:

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his *reasonable and entire compensation as damages for such infringement,* including the minimal statutory damages as set forth in [17 U.S.C. § 504(c)] . . . .

28 U.S.C. § 1498(b) (emphasis added).[2]

We held in *Gaylord II*, 678 F.3d at 1343, that when the government is the infringer, and a claim is brought under § 1498(b), "the methods used to determine 'actual damages' under the copyright damages statute, 17 U.S.C. § 504, are appropriate for measuring the copyright owner's loss." Notably, § 504(b) requires the copyright owner to prove "the *actual damages suffered by him or her as a result of* the infringement" (emphasis added).

We further explained in *Gaylord II* that the "reasonable and entire compensation" provided for by § 1498(b) "entitles copyright owners to compensatory damages, . . . but not to non-compensatory damages." 678 F.3d at 1343.  We went on to observe that the focus for calculating damages is on "the copyright owner's loss," as opposed to the value obtained by the government. *Id.*; *see also id.* ("[C]ourts must determine just compensation for

---

2    Statutory damages permitted by § 504(c) are "not less than $750 or more than $30,000."  Statutory damages are not at issue here as Bitmanagement sought actual damages.

the plaintiff's loss when the government takes what is essentially a compulsory, non-exclusive license on the plaintiff's copyright."); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) ("The award of the owner's actual damages looks at the facts from the point of view of the[] copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act."). The statutory requirement to show actual damages that are the *consequence of*, and thus are *caused by*, the government's infringement cannot be squared with Bitmanagement's insistence that it is entitled to recover per-copy damages, even where the parties' past dealings support the factfinder's determination that these parties would have adopted a different approach in a hypothetical negotiation.

Also in *Gaylord II*, we set out the framework for determining damages:

> When, as in this case, the plaintiff cannot show lost sales, lost opportunities to license, or diminution in the value of the copyright, many circuits award actual damages based on the fair market value of a license covering the defendant's use. The value of this license should be calculated based on a hypothetical, arms-length negotiation between the parties.

678 F.3d at 1343 (internal quotation marks and citations omitted); *see also Bit II*, 989 F.3d at 951 n.5 (reiterating applicability of *Gaylord II* framework). In determining the fair market value of such a license, a trial court "must consider *all* evidence relevant to a hypothetical negotiation," including both parties' past licensing practices and their goals in the negotiation. *Gaylord II*, 678 F.3d at 1344.

No case that we or the parties have identified, in this or any other circuit, requires that an award of copyright damages invariably be on a per-copy basis. In fact, in

*Gaylord II*, we relied on several of the cases that Bitmanagement now, unpersuasively, argues require reversal of the Court of Federal Claims. *See* 678 F.3d at 1343 (citing, e.g., *On Davis*, 246 F.3d at 152, 164, 172; *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 359-60 (6th Cir. 2007)). We have also expressly confirmed that our holding in *Gaylord II* – that "actual damages for copyright infringement may be based on a reasonable royalty representing the fair market value of a license covering the defendant's use" – is "[c]onsistent with the conclusions of other circuits that have considered the issue." *Gaylord III*, 777 F.3d at 1367 (internal quotation marks omitted).

In *On Davis*, on which Bitmanagement relies heavily, the Second Circuit repeatedly described the pertinent analysis as aimed at determining "a fair market value for a license to *use*" the copyrighted work. 246 F.3d at 161 (emphasis added); *see also id.* ("[A] jury could reasonably find that Davis established a fair market value of at least $50 as a fee for the *use* of an image of his copyrighted design.") (emphasis added); *id.* at 164 (making additional references to "license to make such *use* of the work") (emphasis added). That case involved the number of copies actually used in print circulation. The Second Circuit also criticized the plaintiff's per-copy damages request of $2.5 million as "wildly inflated." *Id.* at 161. Nowhere did the Second Circuit suggest that a per-copy approach should be applied even when the number of copies made does not reflect actual use.

Bitmanagement is correct that in another case it presses before us, *Thoroughbred Software*, 488 F.3d at 352, the Sixth Circuit reversed a district court's damages award that was found to have been wrongly based solely on the infringing copies of software that had been actually used. In requiring that the copyright owner also be compensated for unused infringing copies, the Sixth Circuit relied on explicit provisions in the applicable license agreement,

which provided that "a license fee is due for each copy of the software purchased" and "the licensee cannot make additional copies." *Id.* at 359; *see also Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 775-76 n.5 (9th Cir. 2006) (in another case relied on by Bitmanagement, a jury's lump-sum award was upheld where it was based, in part, on license terms specifically establishing a seat license, effectively prohibiting copying of the software). Here, by contrast, where the parties' commercial history included licensed sales based on the number of simultaneous users, there is no basis to read such a provision into the parties' implied license.

Fundamentally, nothing in *Thoroughbred Software*, nor any other case we have identified, supports the proposition that a copyright owner is entitled to compensation based on each copy made by an infringer when the hypothetical negotiation would proceed on a different basis. Instead, every case, including this one, requires consideration of the particular facts and circumstances, as demonstrated by the record. And, in a case like this one, damages are measured by the fair market value of a license the government would have obtained in a hypothetical negotiation at the start of its infringement, as we explained in *Gaylord II*.

2

On remand, the Court of Federal Claims faithfully and carefully applied the *Gaylord II* framework, ultimately finding – based on the record before it – that the parties would have agreed to a primarily usage-based licensing scheme. J.A. 1 ("The Federal Circuit directed this Court to look at the *Gaylord* line of cases as a guide."); *see also* J.A. 21 ("[T]he essence of the damages' inquiry is how much would the Navy agree to a license covering this usage."). In our view, whether or not footnote 5 in *Bit II* is binding, the facts found by the Court of Federal Claims – none of which are clearly erroneous – permit no other conclusion than

that the parties would have adopted a primarily usage-based approach in a hypothetical negotiation.[3] As required by *Gaylord II*, the trial court evaluated the totality of the evidence before it and made findings as to the value of a license the parties would have hypothetically negotiated at the time the Navy started to infringe.  J.A. 1 (trial court explaining it "was tasked with determining damages taking the form of a hypothetical negotiation").  The court "look[ed] at the evidence presented by both sides to determine the fair market value of a license to which the parties would have agreed." *Gaylord II*, 678 F.3d at 1343; *see also Gaylord III*, 777 F.3d at 1367-68 (noting need to use "objective considerations in the determination of a copyrighted work's market value") (internal quotation marks and citations omitted).  Its factual findings are not clearly erroneous and its damages award is not, in any respect, an abuse of its discretion.

---

[3]   We acknowledge that the court suggested it may have awarded Bitmanagement greater damages had it not viewed itself as bound to follow footnote 5.  J.A. 21 ("In the usual copyright case, recovery is for infringing copies.  Here, however, the Federal Circuit has mandated that . . . damages cannot be based on number of copies made."); *see also* J.A. 9 (suggesting "[o]rdinarily" the court would not consider whether copies were used but must do so here due to "the Federal Circuit's remand").  We take this to mean that if the trial court applied a different approach – i.e., awarding damages on a per-copy, rather than actual use, basis – it would have reached a different damages award. *See* J.A. 21 n.18.  None of this affects the proper disposition of this appeal because, regardless of its reasons for doing so, the trial court correctly followed our binding precedent of *Gaylord II* in determining the results of a hypothetical negotiation.  Thus, we need not address the question of whether footnote 5 was a mandate or dicta.

In particular, the Court of Federal Claims carefully reviewed the "objective considerations," including the parties' actual discussions, their licensing histories, and the leverage each would have been able to exert at the hypothetical negotiating table. *See* J.A. 7-23. The court also evaluated the competing opinions of the parties' experts, finding the government's expert, Mr. Kennedy, "more reliable," for reasons including that he appeared to have considered the entire record, whereas Bitmanagement's Mr. Graff overlooked record evidence, J.A. 20, choosing instead to focus on urging the court to award damages on a per-copy, rather than usage, basis.

Considering all of the evidence, the Court of Federal Claims determined that, as a result of a hypothetical, arms-length negotiation, "the parties would have considered the types of licenses that would have best fit the Navy's anticipated use of BS Contact Geo" and then would have agreed on a combination of unique-user seat licenses and a floating license. J.A. 22. Specifically, after setting out in detail how many computers the Navy installed BS Contact Geo on, and reviewing the usage logs to see how many unique users accessed the software during the damages period, the court found that the Navy would have needed 597 additional seat licenses, for which it would have paid $200 each (Mr. Graff proposed $259, Mr. Kennedy proposed $200).[4] It further found, based in part

---

[4]    The experts' cost estimates were based, in part, on what the Navy had paid Bitmanagement prior to the infringement. As we summarized in *Bit II*, 989 F.3d at 941, "the Navy purchased copies of the Bitmanagement BS Contact Geo system, through intermediary Planet 9, on three occasions: one copy purchased in 2006 for $990, 100 copies purchased in 2008 for $30,000 [i.e., an average price of $300 per license], and 18 copies purchased in 2012 for $5,490 [an average of $305 per license]."

on discussions Bitmanagement and the Navy held between 2013 and 2015 – in which both parties expressed hope that wider distribution of the software would lead to increases in its use – that the Navy would have agreed to another 100 floating licenses, at $350 each. It is undisputed that doing the necessary math using these numbers results in a total cost of $154,400.

There is no clear error in any of the Court of Federal Claims' findings and we discern no abuse of discretion in its damages judgment. Indeed, many of the findings on which the Court of Federal Claims based its damages award are not (and cannot be) challenged: they were findings originally made in connection with the first trial and were before us – but not disturbed by us – in *Bit II*. Hence, as the trial court recognized, these findings cannot be challenged at this stage. *See generally Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 627 (Fed. Cir. 2015) (describing "doctrine of law of the case" and explaining that "successive litigation of an issue of fact or law already litigated and resolved in valid court determination essential to prior judgment" is barred) (internal quotation marks, citations, and emphasis omitted). Such findings include:

- In 2013, at the start of the Navy's infringement and, therefore, the date of the hypothetical negotiation, "Bitmanagement's yearly operating revenue was declining by approximately 50%," and the company "was only completing a few licenses per year with respect to BS Contact Geo." J.A. 4.

- In 2013, "potential customers for BS Contact Geo were also considering the use of X3DOM – a free open-source framework for 3D graphics," including for X3D (Extensible Three-Dimensional) graphics. J.A. 5.

- Bitmanagement offered licensees discounts as the number of licenses the licensees purchased increased. J.A. 5.

- "In trying to sell BS Contact Geo, Bitmanagement told potential customers that its website licenses allowed for unlimited downloads, installations, and/or use of its software in connection with the website." J.A. 5. "None of Bitmanagement's website licenses restricted the number of downloads." J.A. 6.

On remand, in addition to reiterating the findings that were undisturbed by the prior appeal, the Court of Federal Claims made numerous additional, pertinent findings. These include:

- "[I]n July 2013, Bitmanagement was in poor financial condition," as the "market for BS Contact Geo was limited" and "Bitmanagement was only completing a few licenses per year, at a low total dollar rate." J.A. 13-14.

- While BS Contact Geo "was the only available product to work in conjunction with SPIDERS 3D," there were also "other X3D viewers available in 2005" that "did not require meshing with SPIDERS 3D." J.A. 14.

- "[T]he Navy was one of Bitmanagement's most important customers for BS Contact Geo," and "Bitmanagement touted its work with the Navy in its advertising and presentations to potential customers." J.A. 13.

- Bitmanagement had executed licenses with foreign governments and other entities for amounts between approximately €6,000 and €45,000, which

> corroborated the Navy's damages contentions ($115,800 to $235,000) far better than Bitmanagement's requested damages ($85,913,400 to $155,400,000).

- "The Navy would have been in a stronger bargaining position than Bitmanagement during the hypothetical negotiation." J.A. 13.

Again, each of these findings is grounded in the record and is not clearly erroneous. Accordingly, the trial court did not abuse its discretion in determining that the amount of damages Bitmanagement suffered as a result of the Navy's copyright infringement was $154,400.

3

Bitmanagement's arguments against the findings made by Court of Federal Claims do not demonstrate any clear error or abuse of discretion by the trial court. The court rationally based its decision on the evidence in the record.

Bitmanagement asserts that the record is devoid of evidence that it ever agreed to a per-use license. *See* Oral Argument at 7:16-59, *available at* https://oralarguments. cafc.uscourts.gov/default.aspx?fl=23-1506_09032024.mp3. To the contrary, the floating license agreement negotiated with the Navy was, as we have explained, a form of a per-use license.

Bitmanagement also suggests that the Court of Federal Claims failed to adequately consider the convenience benefit to the Navy of having Bitmanagement's software accessible on nearly half a million computers. This is incorrect. After noting that it was "attracted to the 'convenience factor' argument," the trial court added that Bitmanagement had "yet again, . . . failed to provide the cost of convenience in its damages' calculations." J.A. 19 n.17. Because Bitmanagement had

not attempted to quantitatively value the convenience factor and had instead insisted on a per-copy damages theory, it gave the court no reliable way to account for the value of convenience to the Navy.

Bitmanagement also attempts to dissect the royalty base the Court of Federal Claims used, which was "429,567 copies of BS Contact Geo 8.001 with 597 unique users and 100 additional simultaneous-use licenses." J.A. 17. Bitmanagement emphasizes that the Navy only produced usage logs for years two and three of the damages period, and only for usage of BS Contact Geo with SPIDERS 3D and not with any other platform. Open. Br. 53-58; *see also* J.A. 10087 (government admitting: "The Navy has not tracked whether Navy personnel have used BS Contact Geo to view X3D files outside the context of SPIDERS 3D, and, thus, cannot identify whether such uses occurred or each such use."). These holes in the record were plugged in a reasonable manner. For year one usage, "the missing year," the Court of Federal Claims used "the highest year of users, 224 users for September 2014 – August 2015," rejecting Mr. Kennedy's proposal to take an average of the year two and year three figures (which would have resulted in an even smaller damages award). J.A. 17. With respect to non-SPIDERS 3D usage, multiple witnesses testified that, outside the SPIDERS 3D platform, they were unaware of any need for BS Contact Geo, and Bitmanagement did not pursue further discovery that might have allowed it to quantify any potential non-SPIDERS 3D usage. *See, e.g.*, J.A. 1866 (government witness testifying that he was "not aware of any other demand for BS Contact Geo" outside of SPIDERS 3D); J.A. 1905 (another government witness testifying to same); *see also* J.A. 2132 (same government witness testifying that "[p]rior to SPIDERS 3D, it would be a handful [of users]" who were interested in this type of 3D capability).

Finally, Bitmanagement points to language in *Bit II* to suggest that the Court of Federal Claims understated the

damages Bitmanagement suffered.      Bitmanagement highlights two sentences from our prior opinion:

> This condition [i.e., the requirement to use Flexera to track usage] rendered reasonable the otherwise objectively         unreasonable        decision        of Bitmanagement to allow the Navy to make unlimited copies of its commercial product. . . . This is one of the rare circumstances where the record as a whole reflects that the *only* feasible explanation for Bitmanagement allowing mass copying of its software, free of charge, was the use of Flexera *at the time of copying*.

*Bit II*, 989 F.3d at 950.  These statements explain our conclusion that the Flexera provision in the license agreement is an enforceable condition of the agreement between the parties – rendering the Navy's conduct copyright infringement – and not "merely a covenant such that any grievance raised by Bitmanagement necessarily sounds in contract."  *Id.*    These statements concern liability, not the amount of damages needed to appropriately compensate Bitmanagement for the Navy's infringement.  Nothing in the sentences excerpted above, or any other part of *Bit II*, constrained the trial court's freedom to find, on the facts before it, whatever amount of damages was supported by the evidence.

Thus, again, we conclude that the Court of Federal Claims' damages analysis is not clearly erroneous and the court did not abuse its discretion.

## B

Bitmanagement's further procedural attacks on the Court of Federal Claims' judgment are largely dependent on its contention, which we have now rejected, that a proper damages calculation must be based on each unauthorized copy the Navy made of the software, rather

than the use the Navy made of those copies. Therefore, we may dispose of these arguments with little discussion.

Bitmanagement insists that the Court of Federal Claims erred by requiring it, instead of the Navy, to prove the amount of use the Navy made of BS Contact Geo. Pointing to footnote 5 in our prior opinion, Bitmanagement contends that the trial court was required to place this burden on the Navy, but failed to do so. *See Bit II*, 989 F.3d at 951 n.5 ("As the party who breached the Flexera requirement in the implied license, the Navy bears the burden of proving its actual usage of the BS Contact Geo software and the extent to which any of it fell within the bounds of any existing license."). The government counters that Bitmanagement, as the party seeking to prevail on an infringement claim, bears the burden of proving its damages, notwithstanding whatever this court may have meant by footnote 5.

For at least two reasons, we find it unnecessary to determine which party should have borne the burden of showing the Navy's usage. First, the Court of Federal Claims *did*, in fact, place this burden on the Navy. J.A. 15 ("[T]he Defendant has the burden of proof (according to the Federal Circuit) . . . ."). Therefore, the basic premise of Bitmanagement's argument is unsupported. The court never shifted this burden to Bitmanagement. At most, the court merely mentioned – in the course of *rejecting* Mr. Kennedy's estimate of the Navy's use of BS Contact Geo during the first year of infringement – that Bitmanagement, like the government, had failed to produce evidence on this point. J.A. 17 (noting Bitmanagement "has not provided any calculations that would capture this year"). Bitmanagement's evidentiary failings on numerous points were worthy of note, and the

trial court emphasized this reality.[5]  The Court of Federal Claims was obligated to make findings based on the record the parties did, and did not, create, and that is precisely what the court did.  But at no point did the Court of Federal Claims shift the burden of proof to Bitmanagement on the issue of the amount of infringing use.

Second, the Navy *did* produce evidence of its use, indeed the best available evidence, including whatever usage logs it had in its possession and witnesses to testify about that usage.  *See, e.g.*, J.A. 16-17.  "[I]f actual damages can not be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the *best available evidence*, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer."  *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) (emphasis added).  The trial court proceeded in a manner consistent with this directive, which permitted it, in its role as factfinder, to credit the government's best available

---

[5]    Indeed, on many points, Bitmanagement simply did not present competing evidence, instead limiting its efforts "to only undermining Mr. Kennedy" and his theory that Bitmanagement did not suffer from unused copies of BS Contact Geo being installed on Navy computers.  J.A. 19; *see also id.* ("The Court is attracted to the 'convenience factor' argument [made by Bitmanagement].  However, yet again, the Plaintiff has failed to provide the cost of convenience in its damages' calculations."); *id.* at 22-23 ("Furthermore, the Court has no other concrete figure because Plaintiff's calculations were based only on per-seat licenses and were determined without examining objective considerations.").

evidence over Bitmanagement's failure to offer contrary evidence.[6]

As a final challenge to the Court of Federal Claims decision, Bitmanagement argues that it abused its discretion in admitting the testimony of Mr. Kennedy. The principal basis for Bitmanagement's contention is its characterization of Mr. Kennedy's opinion as legally erroneous. Because we have now held there was no error in awarding damages here based primarily on use rather than copies, this cannot be a ground for excluding the testimony. Bitmanagement additionally argues that Mr. Kennedy's opinions are unreliable because he failed to accurately account for the Navy's usage of BS Contact Geo within the SPIDERS 3D platform in year one and failed to account for any usage outside of the SPIDERS 3D platform. We discussed above how these holes in the record do not undermine the trial court's judgment; neither do they provide a meritorious basis to exclude Mr. Kennedy's testimony. At most, these matters could have impacted the

---

[6] The record is devoid of any indication that Bitmanagement attempted to develop a damages theory that may have supported per-use damages for more than 597 unique user licenses and 100 additional simultaneous-use licenses. On remand, instead of filing a motion to compel further damages-related discovery, and instead of presenting affirmative damages evidence at the new trial, Bitmanagement contented itself with cross-examining the government's expert, Mr. Kennedy, and trying to persuade the court to award damages for every copy the Navy made of BS Contact Geo. *See* J.A. 21-22 ("Plaintiff has been persistent in focusing on a per-copy license . . . . At [the second] trial, Plaintiff did not call a rebuttal witness, although this Court gave Plaintiff the opportunity.").

weight the court gave to his opinions – but they do not make his testimony inadmissible. *See generally Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (finding that even when expert's "credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility"); *see also Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1221 (Fed. Cir. 2006) ("The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination.") (internal quotation marks omitted).

Thus, again, we have no basis to reverse the Court of Federal Claims.

IV

We have considered Bitmanagement's remaining arguments and find them unpersuasive. Because the Court of Federal Claims' damages award was not an abuse of discretion, we affirm.

**AFFIRMED**